64 A.3d 514

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOHN J. ROCKFORD, III, A/K/A JOHN ROCKFORD, DEFENDANT–RESPONDENT.

Argued October 23, 2012—Decided April 23, 2013.

*Deborah C. Bartolomey*, Deputy Attorney General, argued the cause for appellant (*Jeffrey S. Chiesa*, Attorney General of New Jersey, attorney).

*Steven E. Nelson* argued the cause for respondent (*Nelson, Fromer, Crocco & Jordan*, attorneys; *Mr. Nelson* and *Jeffrey M. Zajac*, on the brief).

Justice PATTERSON delivered the opinion of the Court.

On August 24, 2007, officers from the Manalapan Police Department executed a search warrant at the home that defendant John J. Rockford, III shared with his parents. Based upon an investi-

gation that included surveillance, officers suspected defendant of conducting a drug distribution operation in his residence, and concluded that defendant had access to weapons located in the home. The search warrant executed by the Manalapan police officers was a "knock-and-announce" warrant, which, with narrow exceptions, requires officers to knock on the door and announce their authority and purpose before entering the premises. In their execution of the warrant, the officers followed a written plan that included the use of a "flash-bang" diversionary device, designed to generate an intense flash of light and loud noise to briefly distract a suspect. They deployed the flash-bang device outdoors, on defendant's driveway, immediately before entering the open garage, knocking on the doors of the residence and entering the home itself. The officers' search yielded a substantial volume of controlled dangerous substances (CDS), CDS paraphernalia, and weapons.

Defendant moved to suppress the evidence recovered by the police from the search. He challenged the officers' use of the flash-bang device prior to knocking and announcing their presence, and their conduct as they entered the garage and the interior of the home, on the ground that the officers violated the "knock-and-announce" provision of the warrant. The trial court denied the motion to suppress, and defendant pled guilty to two drug offenses.

Defendant appealed. A divided Appellate Division panel reversed the trial court's decision denying the motion to suppress. The panel's majority held that the preplanned use of a flash-bang device is inherently inconsistent with a knock-and-announce search warrant, and that the officers' search violated the terms of the warrant, thus requiring the exclusion of the evidence discovered during the search. A member of the panel dissented, finding the officers' execution of the search warrant objectively reasonable, and concluding that their preplanned deployment of the flash-bang device was proper under the circumstances of this case.

By virtue of the dissent in the Appellate Division, the State appealed as of right.

We reverse the Appellate Division panel's determination. We conclude that the execution of the warrant did not violate defendant's right against unreasonable search and seizure under the Fourth Amendment to the United States Constitution or Article I, Paragraph 7 of the New Jersey Constitution. We further conclude that the officers' execution of the search warrant was objectively reasonable, given the setting in which they proceeded—a home containing multiple firearms that was suspected of serving as the hub of a significant drug distribution operation. We decline to adopt a bright-line rule that would preclude the use of a flash-bang device in the execution of a knock-and-announce warrant absent unanticipated exigent circumstances. Under the totality of the circumstances, we find the officers' conduct in executing the search warrant to be objectively reasonable and, thus consistent with constitutional standards.

I.

An anonymous informant's tip triggered the Manalapan Police Department's investigation of defendant. The informant reported that a man named Rockford in his late twenties or early thirties was selling marijuana and prescription drugs by briefly admitting CDS buyers into his garage attached to his residence located near police headquarters. Officers were familiar with defendant because of prior investigations involving the sale of CDS. They determined that although defendant had been denied a handgun permit because of a previous arrest, defendant's seventy-seven-year-old father legally owned four firearms. The officers learned that the father had sought two additional permits, and that defendant frequently accompanied his father when he inquired about the applications' statuses. Thus, from the inception of the investigation, officers were concerned that defendant had ready access to firearms in the home that he shared with his parents.

Police conducted surveillance of defendant's residence for six days in August 2007. Officers observed defendant briefly admit individuals into the garage after opening the overhead garage door. Visitors left holding objects that had not been with them when they arrived. During the surveillance, officers observed groups of people smoking what the officers believed to be marijuana in the garage.

Led by Detective Michael Ratta, the officers applied for a search warrant for defendant's residence, a shed on the property, and vehicles registered to defendant and his father. Detective Ratta's affidavit, submitted in support of the warrant application, set forth the results of the officers' investigation, including details on the surveillance of the home. The officers requested that the warrant permit them to search for CDS, CDS paraphernalia, evidence of CDS manufacturing, records of proceeds from CDS sales, computer files and firearms. They requested that the court issue a "no-knock" warrant permitting police officers to enter defendant's residence without announcing their presence or purpose.

With the application for the warrant submitted to the court, the officers planned their operation. Lieutenant Michael Fountain, leader of the Manalapan Police Department's Emergency Response Team (ERT), led the planning. Lieutenant Fountain was certified as an instructor in the use of the flash-bang device, which the Department had yet to deploy in any police operation. On August 22, 2007, officers met to discuss the execution of both a "no-knock" and a "knock-and-announce" warrant.

On August 23, 2007, a Superior Court judge issued the warrant but directed that it be a knock-and-announce warrant, rather than the requested no-knock warrant. The officers then completed a "risk assessment matrix" to determine the operation's threat to police safety. Given defendant's suspected involvement in CDS and defendant's potential access to firearms, the ERT was charged with leading the execution of the warrant. The Manala-

pan Police Department did not seek an emergent appeal of the trial court's denial of the "no-knock" provision that it had sought.

With the search warrant in hand, the officers finalized their plan for the warrant's execution. The plan called for a dozen officers, divided into three teams, to approach defendant's home from different vantage points. Team One, consisting of five officers and headed by Lieutenant Fountain, would deploy the flash-bang device outdoors. The plan called for Lieutenant Fountain to toss the device from a vehicle parked in the neighbor's driveway to defendant's driveway, and then to proceed into the garage, detaining anyone in the garage and securing the first floor. The four officers comprising Team Two would proceed to the front door of the residence, knock and announce their presence and purpose, and enter the home. Team Three would remain outdoors behind the residence and apprehend anyone attempting to flee.

The officers approached defendant's home late in the afternoon of August 24, 2007. They waited until the overhead garage door was open, and saw two men standing on the driveway near the open door. They recognized one of the men as defendant, based upon descriptions of him as a very tall individual weighing over 300 pounds. Team One mistakenly parked its vehicle in defendant's driveway rather than the neighbor's driveway. Nonetheless, Lieutenant Fountain tossed the flash-bang device from the police vehicle onto defendant's driveway, between thirty and thirty-five feet from the garage, where it emitted a bright flash and a loud sound. Defendant and the other individual retreated into the garage, pursued through the open door by the officers, who shouted, "[p]olice, search warrant. Police, we have a search warrant." Lieutenant Fountain pointed his service weapon at the two men and directed them to put their hands in the air, and officers handcuffed them.

Lieutenant Fountain then proceeded to the door that connected the garage to the inside of the home, knocked on the door and announced, for "[m]aybe three or four seconds," the presence of police with a search warrant. They then entered the interior of

the residence through the door that connected the garage to the home. Meanwhile, as found by the trial court, Team Two knocked on the front door of the house for twenty-five to thirty seconds before attempting to breach the door. As Lieutenant Fountain proceeded through the garage door, he heard officers from Team Two banging on the front door with a battering ram. One of them announced, "[p]olice, stay away from the door, get away from the door." Lieutenant Fountain instructed Team Two to stop attempting to breach the door and to enter the house through the garage. The officers complied. Lieutenant Fountain heard a woman screaming on the second floor. He and another officer encountered an older woman, later identified as defendant's seventy-two-year-old mother, who was characterized by the second officer as "in a state of disbelief." Defendant's father then returned home to find police officers searching the house.

The Manalapan officers' search of defendant's home and property yielded considerable evidence. They found three handguns, a rifle with ammunition, a banana clip ammunition magazine, five pounds of marijuana, more than 7000 prescription drug pills in sample packages or bottles labeled for six individuals, blank prescription forms, seventy-six Fentanyl patches and pops, 340 milligrams of lysergic acid diethylamide (LSD), hashish, psilocybin ("mushrooms") and ecstasy pills. The officers also found processing equipment and paraphernalia including scales, a vacuum sealer, several thousand plastic bags and forty devices used to ingest CDS. The officers also recovered three personal computers, three police radio scanners, mobile telephones and several photographs appearing to depict defendant and others ingesting CDS. The admissibility of this evidence against defendant is the issue before the Court.

## II.

Defendant was indicted on fourteen counts: fourth-degree possession of more than fifty grams of marijuana, *N.J.S.A.* 2C:35-10(a)(3); third-degree possession of more than an ounce of mari-

juana with intent to distribute, *N.J.S.A.* 2C:35–5(b)(11); attempted distribution of more than an ounce of marijuana, *N.J.S.A.* 2C:35–5(b)(11); third-degree possession of psilocybin, *N.J.S.A.* 2C:35–10(a)(1); third-degree possession of psilocybin with intent to distribute, *N.J.S.A.* 2C:35–5(b)(13); third-degree possession of LSD, *N.J.S.A.* 2C:35–10(a)(1); first-degree possession of LSD with intent to distribute, *N.J.S.A.* 2C:35–5(b)(6); third-degree possession of ecstasy, *N.J.S.A.* 2C:35–10(a)(1); third-degree possession of ecstasy with intent to distribute, *N.J.S.A.* 2C:35–5(b)(3); third-degree possession of prescription drugs, *N.J.S.A.* 2C:35–10(a)(1); third-degree possession of prescription drugs with intent to distribute, *N.J.S.A.* 2C:35–5(b)(5); fourth-degree interception of emergency communications for unlawful purposes, *N.J.S.A.* 2C:33–21; fourth-degree possession of a radio to intercept emergency communications while committing a crime, *N.J.S.A.* 2C:33–22; and fourth-degree unlawful possession of a large capacity ammunition magazine, *N.J.S.A.* 2C:39–3(j).

Defendant moved to suppress the evidence found at his home. The trial court held a four-day suppression hearing. Lieutenant Fountain and Sergeant Paul Seetoo, who participated in the execution of the warrant, testified for the State. They discussed the considerations addressed by the officers in their preparation to execute the warrant, their written plan and the events at defendant's residence on August 24, 2007. The State also called an expert witness, Supervisory Special Agent Christopher Curran of the Federal Bureau of Investigation. Special Agent Curran testified about the mechanics of the flash-bang device used by the Manalapan Police Department at defendant's home. He explained that the device emits a bright flash of light and a 174.5–decibel percussion, both of which have a reduced effect when the flash-bang is deployed outdoors. Special Agent Curran opined that the flash-bang device, as used outdoors in this case, was not used as a weapon and posed no danger to the occupants or their property. He testified that its use was "not only prudent but necessary" to ensure the safety of the officers and the occupants, and that this

diversionary tactic was consistent with the constraints of a knock-and-announce search warrant.

Defendant and his parents testified on his behalf at the suppression hearing. Defendant's mother stated that she mistook the sound of the flash-bang device for a problem with her furnace, that she did not hear knocking on the door before hearing the sound of the battering ram and seeing officers in her home, and that she was "scared to death" to encounter an officer pointing a gun at her. Defendant's father testified he was out for a walk when the officers arrived. He said that upon his return he saw a white mark on his driveway, later attributed to the flash-bang device. Defendant testified that the flash-bang device was deployed about five or six feet from him on his driveway.

The trial court denied the motion to suppress. It concluded that the Manalapan Police Department did not violate the terms of the knock-and-announce warrant. Deeming the testifying officers credible, the trial court determined that the officers knocked and announced their presence and their purpose following the detonation of the flash-bang device. The court concluded that the officers' entry into the garage and then into the home was constitutionally permissible. Relying upon two Appellate Division decisions, *State v. Fanelle*, 385 *N.J.Super.* 518, 897 *A.*2d 1104 (App.Div.2006), and *State v. Robinson*, 399 *N.J.Super.* 400, 944 *A.*2d 718 (App.Div.2008), *rev'd on other grounds*, 200 *N.J.* 1, 974 *A.*2d 1057 (2009), the trial court held that the flash-bang device was lawfully used in the execution of the knock-and-announce warrant. The trial judge also found that, in any event, the inevitable discovery doctrine provided an independent ground for the denial of the motion to suppress because the officers were lawfully in the residence and would have located the disputed evidence with or without the flash-bang device.

In the wake of the trial court's denial of his motion to suppress, defendant pled guilty to two of the fourteen charges, first-degree possession of LSD with intent to distribute and third-degree possession of prescription drugs with intent to distribute, in

exchange for the dismissal of the remaining charges. He reserved the right to appeal the denial of his suppression motion. The trial court sentenced defendant to ten years' imprisonment with three years' parole ineligibility and a one-year license suspension for his LSD conviction and a concurrent term of five years' imprisonment with a six-month license suspension for the prescription drug conviction, as well as imposed fees and penalties.

Defendant appealed the denial of his motion to suppress. He argued that the use of the flash-bang device represented unreasonable police conduct in the execution of the warrant, and that the mere three to four seconds between the officers' knocking on the door from the garage to the interior of the home and their entry violated the knock-and-announce provision of the search warrant.

The Appellate Division reversed. The majority of the panel held that the Manalapan Police Department's preplanned deployment of the flash-bang device violated the knock-and-announce provision of the search warrant, characterizing the police tactic as a potential "use of force" and an attempt to circumvent the terms of the warrant. Citing the upsetting effect of the police action on defendant's "elderly parents," the Appellate Division majority criticized the officers for executing the warrant while defendant and the others were at the residence. The majority opined that the officers should have waited "until defendant left the premises" before proceeding into the residence. The majority invoked the exclusionary rule to bar the evidence collected by the officers notwithstanding the existence of a search warrant.

One member of the panel dissented. The dissenting judge opined that the use of the flash-bang device in this case neither violated the terms of the search warrant nor constituted an effort to circumvent those terms. She disputed the majority's conclusion that the officers did not wait a sufficient time between announcing their presence and entering defendant's home. Noting the presence of several firearms in the residence and defendant's interest in his father's pending handgun permits, the dissenting judge

reasoned that the circumstances presented a significant threat to the officers' safety. She stated that the majority's holding that the police should have waited to act until defendant had left the premises ignored the possibility that defendant's father could have used the weapons whether or not defendant was present.

The State appealed as of right, *Rule* 2:2–1(a)(2), and this Court reviews the issues addressed by the dissenting Appellate Division judge. *State v. Allegro*, 193 *N.J.* 352, 371 n. 9, 939 *A.2d* 754 (2008); *Gilborges v. Wallace*, 78 *N.J.* 342, 349, 396 *A.2d* 338 (1978).

### III.

The State urges the Court to reverse the Appellate Division's decision and uphold the trial court's denial of the motion to suppress. It argues that the Manalapan Police Department's outdoor deployment of the flash-bang device was safe and reasonable considering the totality of the circumstances that confronted the officers. The State contends that the officers' entry through defendant's open overhead garage door did not violate the terms of the knock-and-announce search warrant. The State maintains there is no constitutional requirement that police knock on a door that is open, and that once inside the garage, the officers could lawfully enter the interior of the residence. It further contends that the Appellate Division majority improperly applied the exclusionary rule as a remedy for the constitutional violation that it found.

Defendant argues that the Appellate Division majority properly held that a flash-bang device cannot constitutionally be used in the execution of a knock-and-announce search warrant. Relying upon the Appellate Division's decisions in *Fanelle* and *Robinson*, defendant urges the adoption of a bright-line rule barring the use of a flash-bang device in the execution of a knock-and-announce warrant absent a showing of unforeseen circumstances. He further contends that the officers' entry through the open garage door violated the terms of the warrant, because the two police teams' simultaneous knocking on two doors undermined the purpose of

the knock-and-announce warrant. Defendant urges the Court to affirm the Appellate Division's application of the exclusionary rule as a remedy for what he contends was an unconstitutional execution of the search warrant in this case.

## IV.

We consider the factual findings of the trial court, premised upon detailed testimony elicited in a lengthy suppression hearing, in accordance with a deferential standard of review. " '[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.' " *State v. Robinson,* 200 *N.J.* 1, 15, 974 *A.*2d 1057 (2009) (alteration in original) (quoting *State v. Elders,* 192 *N.J.* 224, 243, 927 *A.*2d 1250 (2007)). Those findings warrant particular deference when they are " 'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.' " *Ibid.* (quoting *Elders, supra,* 192 *N.J.* at 244, 927 *A.*2d 1250). To the extent that the trial court's determination rests upon a legal conclusion, we conduct a de novo, plenary review. *State v. J.D.,* 211 *N.J.* 344, 354, 48 *A.*3d 1031 (2012); *State v. Gandhi,* 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010).

## V.

The Fourth Amendment to the United States Constitution ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that no warrant shall issue "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U.S. Const.* amend. IV. Article I, paragraph 7 of the New Jersey Constitution similarly shields our State's residents from unreasonable searches and seizures. *N.J. Const.* art. I, ¶ 7. Its reach has been held coextensive to that of the Fourth Amend-

ment as applied to the method of executing knock-and-announce search warrants. *State v. Johnson,* 168 *N.J.* 608, 617, 775 *A.*2d 1273 (2001); *see also Robinson, supra,* 200 *N.J.* at 14, 974 *A.*2d 1057; *State v. Jones,* 179 *N.J.* 377, 397, 846 *A.*2d 569 (2004).

 Under the federal and state constitutions, the inquiry into the reasonableness of a residential search entails scrutiny of the steps taken by officers to enter and search a home. *Johnson, supra,* 168 *N.J.* at 616, 775 *A.*2d 1273 (citing *Wilson v. Arkansas,* 514 *U.S.* 927, 934, 115 *S.Ct.* 1914, 1918, 131 *L.Ed.*2d 976, 982 (1995)). If police actions in executing a warrant are objectively reasonable, there is no constitutional violation. *Illinois v. Rodriguez,* 497 *U.S.* 177, 185, 188, 110 *S.Ct.* 2793, 2799, 2801, 111 *L.Ed.*2d 148, 159, 161 (1990); *State v. Maristany,* 133 *N.J.* 299, 305, 627 *A.*2d 1066 (1993). Evaluating the constitutionality of police conduct in executing a warrant, "the basic test under both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7, of the New Jersey Constitution is the same: was the conduct objectively reasonable in light of 'the facts known to the law enforcement officer at the time of the search.'" *State v. Handy,* 206 *N.J.* 39, 46–47, 18 *A.*3d 179 (2011) (quoting *State v. Bruzzese,* 94 *N.J.* 210, 221, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695–96 (1984)). The terms of the warrant must be strictly respected. "It is well settled that officers searching a person's home, car or belongings under authority of a search warrant are authorized to use only those investigatory methods, and to search only those places, appropriate in light of the scope of the warrant." *State v. Reldan,* 100 *N.J.* 187, 195, 495 *A.*2d 76 (1985).

 The warrant at issue incorporated a knock-and-announce provision. Such a provision "renders unlawful a forcible entry to arrest or search 'where the officer failed first to state his authority and purpose for demanding admission.'" *Robinson, supra,* 200 *N.J.* at 13–14, 974 *A.*2d 1057 (quoting *Miller v. United States,* 357 *U.S.* 301, 308, 78 *S.Ct.* 1190, 1195, 2 *L.Ed.*2d 1332, 1337

(1958)).[1] The knock-and-announce rule "has never protected ... one's interest in preventing the government from seeing or taking evidence described in a warrant." *Hudson v. Michigan,* 547 *U.S.* 586, 594, 126 *S.Ct.* 2159, 2165, 165 *L.Ed.*2d 56, 66 (2006). Instead, the rule serves three fundamental goals: (1) to reduce the risk of violence to police and bystanders; (2) to protect the privacy of uninvolved residents by minimizing the risk that police will enter the wrong premises; and (3) to prevent property damage stemming from forcible entry. *See Johnson, supra,* 168 *N.J.* at 616, 775 *A.*2d 1273; *Robinson, supra,* 399 *N.J.Super.* at 411, 944 *A.*2d 718; *State v. Rodriguez,* 399 *N.J.Super.* 192, 199, 943 *A.*2d 901 (App.Div.2008). As the United States Supreme Court has observed, the knock-and-announce rule affords residents the "opportunity to prepare themselves" for the entry of police, and the "brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed." *Richards v. Wisconsin,* 520 *U.S.* 385, 393 n. 5, 117 *S.Ct.* 1416, 1421 n. 5, 137 *L.Ed.*2d 615, 623 n. 5 (1997). The rule is premised upon the principle that even a short delay between the announced arrival of police and entry into a home safeguards privacy and security and guards against unreasonable intrusion. *Ibid.*

---

[1] A court may issue a "no-knock" search warrant premised upon "a reasonable, particularized suspicion that a no-knock entry is required to prevent the destruction of evidence, to protect the officer's safety, or to effectuate the arrest or seizure of evidence," and when the officers have articulated "a minimal level of objective justification to support the no-knock entry, meaning it may not be based on a mere hunch." *Johnson, supra,* 168 *N.J.* at 619, 775 *A.*2d 1273; *see also Jones, supra,* 179 *N.J.* at 399–400, 846 *A.*2d 569 (discussing examples of circumstances justifying issuance of a no-knock warrant). Even when the knock-and-announce rule governs, it is not absolute. This Court has recognized exceptions to the rule where "(1) immediate action is required to preserve evidence; (2) the officer's peril would be increased; or (3) the arrest [or seizure] would be frustrated." *State v. Fair,* 45 *N.J.* 77, 86, 211 *A.*2d 359 (1965) (citations omitted). Neither the showing required for a no-knock warrant nor the applicability of an exception to the knock-and-announce rule is before the Court on this appeal.

■ The United States Supreme Court and this Court, in other settings, have recognized the importance of protecting officer safety. *See, e.g., Terry v. Ohio,* 392 *U.S.* 1, 24, 88 *S.Ct.* 1868, 1881, 20 *L.Ed.*2d 889, 908 (1968) ("it would appear to be clearly unreasonable to deny [a police] officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm"); *State v. Davila,* 203 *N.J.* 97, 115, 999 *A.*2d 1116 (2010) (explaining that this Court has "long shared the dual concerns for individual rights and officer safety that underpin *Terry* and *Long*[2], and our commitment to balancing those principles is well documented"); *State v. Dunlap,* 185 *N.J.* 543, 551, 888 *A.*2d 1278 (2006) (noting that "[p]olice safety and the preservation of evidence remain the preeminent determinants of exigency"); *State v. Roach,* 172 *N.J.* 19, 27, 796 *A.*2d 214 (2002) (explaining that "[t]he protective search exception to the warrant requirement was created to protect an officer's safety where there is reason to believe that a suspect is armed and dangerous"). Thus, the safety of police officers, particularly when the subject of the investigation has access to weapons, is an important concern in the reasonableness determination.

■ As the United States Supreme Court and this Court have recognized, the balancing of individual rights and law enforcement safety is best accomplished by a case-specific analysis. *United States v. Banks,* 540 *U.S.* 31, 35–36, 124 *S.Ct.* 521, 525, 157 *L.Ed.*2d 343, 352 (2003); *Robinson, supra,* 200 *N.J.* at 16, 974 *A.*2d 1057. Courts should evaluate the execution of each warrant in its factual context, "largely avoiding categories and protocols for searches." *Banks, supra,* 540 *U.S.* at 35, 124 *S.Ct.* at 525, 157 *L.Ed.*2d at 352; *see also Robinson, supra,* 200 *N.J.* at 16, 974 *A.*2d 1057 (noting that the standard of reasonableness " 'is "necessarily vague," and turns on the circumstances existing when the police execute the warrant' " (quoting *Rodriguez, supra,* 399 *N.J.Super.* at 200, 943 *A.*2d 901)). Accordingly, our task is not to devise an

---

[2] *Michigan v. Long,* 463 *U.S.* 1032, 103 *S.Ct.* 3469, 77 *L.Ed.*2d 1201 (1983).

inflexible protocol to guide the conduct of officers in the diverse and sometimes dangerous circumstances that they confront. Instead, we consider the objective reasonableness of the Manalapan officers' execution of the search warrant in its setting to determine whether it complied with constitutional principles and the terms of that warrant.

## VI.

The Manalapan officers' decision to use a flash-bang device as they executed the knock-and-announce warrant raises the primary issue addressed in this appeal. The United States Supreme Court has yet to consider the constitutionality of police deployment of a flash-bang device in the execution of either a knock-and-announce search warrant or a warrant authorizing a no-knock entry. Federal case law regarding this issue imposes no blanket prohibition on the use of flash-bang devices in the execution of knock-and-announce warrants. Several federal appellate courts have upheld the denial of suppression motions on a case-by-case basis. *See, e.g., United States v. Boulanger*, 444 *F*.3d 76, 84–85 (1st Cir.), *cert. denied*, 549 *U.S.* 906, 127 *S.Ct.* 235, 166 *L.Ed.*2d 186 (2006); *United States v. Morris*, 349 *F*.3d 1009, 1012–13 (7th Cir.2003); *Molina ex rel. Molina v. Cooper*, 325 *F*.3d 963, 973 (7th Cir.2003); *United States v. Folks*, 236 *F*.3d 384, 388 n. 2 (7th Cir.), *cert. denied*, 534 *U.S.* 830, 122 *S.Ct.* 74, 151 *L.Ed.*2d 39 (2001); *United States v. Myers*, 106 *F*.3d 936, 940 (10th Cir.), *cert. denied*, 520 *U.S.* 1270, 117 *S.Ct.* 2446, 138 *L.Ed.*2d 205 (1997).

We can distill several principles from these cases that have relevance here. First, several federal appellate courts have identified careful police planning prior to executing a warrant using a flash-bang device as a factor supporting a finding that law enforcement conduct is objectively reasonable. *See Boulanger, supra*, 444 *F*.3d at 80, 85 (noting use of flash-bang device indoors was reasonable when "police planned the search after determining that there were no children or elderly people in the apartment"); *Molina, supra*, 325 *F*.3d at 966 (noting police finding, prior to the

search, that the execution of the warrant satisfied internal criteria for "high risk search[ ]" warrants); *Folks, supra*, 236 *F*.3d at 388 & n. 2 (affirming denial of motion to suppress based upon the inevitable discovery doctrine, and noting that police were "sufficiently careful" in checking residence before deploying device and carrying fire extinguisher to "quickly extinguish any fires resulting from [its] deployment").

Second, the presence of weapons in a residence has been held to weigh in favor of a finding that the use of a flash-bang device was constitutionally permissible. *See Boulanger, supra*, 444 *F*.3d at 85 (holding flash-bang deployment was reasonable when "agents were confronted with a situation involving a man with a history of violent crimes, who was a suspect in an armed robbery, was suspected of selling drugs out of the residence to be searched, and who likely possessed what an informant who was not an expert described as a fake gun"); *Molina, supra*, 325 *F*.3d at 973 (determining use of flash-bang satisfied test of objective reasonableness where subject of search "had a criminal record that included aggravated assault, was at home, and had access to weapons"); *Myers, supra*, 106 *F*.3d at 938 (recognizing defendant, as juvenile, had been implicated in fire bombing and had been convicted of possessing fire bomb and unregistered firearm); *see also Morris, supra*, 349 *F*.3d at 1012 n. 1 (noting, in dicta, that use of flash-bang "appear[ed] to be reasonable" where "[t]he police had reason to believe that the inhabitants of the residence were dangerous after finding live ammunition in the trash").

Finally, in every case in which federal appellate courts have found the use of a flash-bang in the execution of a warrant to be objectively unreasonable, the device had been deployed in an indoor setting in which it posed a risk to occupants and property. *See United States v. Ankeny*, 502 *F*.3d 829, 836–38 (9th Cir.2007) (holding officers' deployment of flash-bang device indoors, in direction of defendant who consequently suffered serious burns, constituted excessive force and may have been unreasonable, but affirming denial of suppression motion because discovery of evi-

dence was inevitable), *cert. denied,* 553 *U.S.* 1034, 128 *S.Ct.* 2423, 171 *L.Ed.*2d 233 (2008); *Boyd v. Benton Cnty.,* 374 *F.*3d 773, 779 (9th Cir.2004) (use of device in occupied apartment without warning was unreasonable); *United States v. Jones,* 214 *F.*3d 836, 837–38 (7th Cir.2000) (finding the deployment of a flash-bang device into occupied living room to be unreasonable, but affirming denial of defendant's motion to suppress under doctrine of inevitable discovery). The heightened risk of personal injury when a flash-bang device is used indoors is not a factor in the case before this Court.

In New Jersey, two Appellate Division panels have considered the use of flash-bang devices in the execution of search warrants. In *Fanelle,* the panel reviewed the trial court's denial of the defendant's motion to suppress evidence of CDS use, premised upon police officers' indoor use of a flash-bang device in the execution of a no-knock search warrant. *Fanelle, supra,* 385 *N.J.Super.* at 525, 528–33, 897 *A.*2d 1104. The defendant contended that the use of the flash-bang device "was unreasonable in the present situation and that because of the inherent dangers the use of such devices present, police should be required to obtain prior judicial approval before using one while executing a warrant." *Id.* at 528, 897 *A.*2d 1104. The panel rejected a bright-line rule requiring such prior judicial approval, acknowledging that such a rule " 'would embark our judiciary on an enterprise for which we are ill equipped by training or experience[.]' " *Id.* at 533–34, 897 *A.*2d 1104 (quoting *Commonwealth v. Garner,* 423 *Mass.* 735, 672 *N.E.*2d 510, 516 (1996)). Given "the paucity of the record," the panel remanded for the development of a more detailed record. *Id.* at 533, 897 *A.*2d 1104.[3]

---

[3] In its decision on remand, relied upon by the dissent, *post* at 458, 64 *A.*3d at 533–34, the trial court in *State v. Fanelle,* 404 *N.J.Super.* 180, 190–92, 960 *A.*2d 825 (Law Div.2008), held that the officers' indoor use of two flash-bang devices was objectively unreasonable. The court relied primarily on its findings that defendant posed an insignificant risk to police safety, that there was no indication of the presence of firearms, and that the officers had violated an internal policy on the deployment of flash-bang devices. *Id.* at 190–93, 960 *A.*2d 825.

In *Robinson,* thirteen police officers knocked on the door, announced their presence and purpose, forced their way into the defendant's apartment, deployed a flash-bang device indoors and arrested the defendant. *Robinson, supra,* 399 *N.J.Super.* at 407–09, 944 *A.*2d 718. The *Robinson* panel held that the flash-bang device "is antithetical to and irreconcilable with the public policy grounds supporting a knock-and-announce warrant." *Id.* at 417, 944 *A.*2d 718. The panel adopted a bright-line rule that absent exigent circumstances, a flash-bang device could not be used to execute a knock-and-announce search warrant. *Ibid.* On the State's appeal, this Court reversed the Appellate Division's judgment on procedural grounds, as the panel had considered the issue notwithstanding the defendant's failure to raise it below. *Robinson, supra,* 200 *N.J.* at 20–22, 974 *A.*2d 1057. This Court noted that the defendant's argument on appeal—that judicial guidelines should constrain the use of flash-bang devices—was not as broad as the panel's "expansive pronouncement that 'flash-bang' devices may only be used with a 'no-knock' warrant[.]" *Id.* at 21, 974 *A.*2d 1057. The Court, however, did not expressly review the Appellate Division's bright-line rule. This case accordingly provides the Court with the first opportunity to consider the issue on its merits.

We decline to adopt the Appellate Division majority's bright-line rule against the use of a flash-bang device to execute a knock-and-announce warrant. We hold that the objective reasonableness of law enforcement's execution of a warrant that includes the use of this tactic should be determined on a case-by-case basis, considering the totality of the circumstances. Courts should weigh such factors as the scope of any threat of violence presented by the occupant, the physical features of the residence, the

The trial court in *Fanelle* relied on the Appellate Division decision in *Robinson* in finding that the deployment of flash-bang devices was unreasonable. *Id.* at 188–89, 192, 960 *A.*2d 825 (citing *Robinson, supra,* 399 *N.J.Super.* at 413, 944 *A.*2d 718). This Court, however, later overturned the *Robinson* Appellate Division decision, albeit on procedural grounds, without reviewing the Appellate Division's bright-line prohibition of flash-bang devices in knock-and-announce searches. *Robinson, supra,* 200 *N.J.* at 20–22, 974 *A.*2d 1057.

presence of others on the premises, the potential loss of evidence if the device is not used and the risk of personal injury and property damage that the deployment would pose. In some circumstances, the use of a flash-bang device may threaten the safety of occupants and undermine the purpose of the knock-and-announce warrant, and a court might properly find that the device cannot reasonably be deployed in a given setting.[4] In other settings, the risk to officer safety or the threat that evidence could be lost may justify the use of the device.

In this case, the search was objectively reasonable. The trial court found that the officers methodically planned the execution of the warrant before it was obtained. It found that the officers alternatively planned for both a no-knock warrant and a knock-and-announce warrant. Based upon their painstaking investigation, the officers suspected defendant of conducting a substantial CDS operation from his home. They knew that defendant had access to several firearms registered to his father, and was intensely interested in the progress of his father's application for additional firearm permits. The officers also were aware that individuals associated with CDS sales could be present when the search warrant was executed. Moreover, the officers neither contemplated nor executed an indoor deployment of the flash-bang device. Instead, Lieutenant Fountain tossed the device from a vehicle onto defendant's driveway, posing no risk of personal injury or property damage other than a mark on the driveway. Following the deployment of the device, defendant and the other

---

[4] The objective reasonableness of the use of the flash-bang device does not turn on whether the deployment of that device constitutes a "use of force," an issue disputed by the parties but not decided by the Appellate Division. Instead, the constitutionality of the execution of the search warrant hinges on whether the warrant was executed in an objectively reasonable manner in light of the totality of the circumstances. *State v. Ravotto*, 169 *N.J.* 227, 236, 777 *A.2d* 301 (2001) (citing *Graham v. Connor*, 490 *U.S.* 386, 396–97, 109 *S.Ct.* 1865, 1872, 104 *L.Ed.2d* 443, 455 (1989)); *State v. Jones*, 143 *N.J.* 4, 19–20, 667 *A.2d* 1043 (1995). Accordingly, we do not determine whether the deployment of the device is a "use of force."

individual retreated into the open garage, where defendant was promptly arrested.[5]

The Appellate Division majority repeatedly invoked the officers' detailed plan for the execution of the warrant, incorporating the use of the flash-bang device, as a source of particular concern.[6] The majority further cited the officers' entry into a home occupied by defendant's "elderly" parents, while armed and wearing "helmets and police vests," as unreasonable police conduct. The officers' detailed advanced planning and use of protective equipment do not prove objective unreasonableness. On the contrary, meticulous police planning should be encouraged, not misconstrued as a sign of unreasonable law enforcement conduct. Here, the officers acted prudently to protect their own safety, refrained from endangering the occupants during the execution of the search warrant, preserved the disputed evidence and arrested defendant without incident.[7]

---

[5] The dissent emphasizes a factual distinction between the federal case law and this case. *Post* at 454–55, 458–60, 64 *A*.3d at 531–32, 533–35. In the federal cases, the flash-bang device was used following the officers' announcement of their presence as they entered a home, whereas in this case, the device was deployed before the officers knocked, announced their presence and entered defendant's home. The distinction cited by the dissent underscores the reasonableness of the officers' conduct in this case. In the cases cited by the dissent, the deployment of the flash-bang device—inside a residence, after the officers had gained entry—created a higher risk to the occupants of the dwelling. *Post* at 458–59, 64 *A*.3d at 534 (citing *Morris, supra,* 349 *F*.3d at 1013; *Folks, supra,* 236 *F*.3d at 388; *Jones, supra,* 214 *F*.3d at 838; *Myers, supra,* 106 *F*.3d at 938–39). In contrast, the officers here did not plan or execute an indoor deployment; they used the device outdoors before even approaching the residence, thus minimizing the risk to the occupants and property.

[6] There is no basis in the record for the Appellate Division majority's suggestion that the Manalapan officers perceived the search warrant in this case as an excuse to debut the Police Department's flash-bang device, which officers had been trained to use, but had yet to be deployed operationally.

[7] The Appellate Division majority opined that the officers should have omitted the use of a flash-bang device and delayed their search until defendant was not on the premises. As the dissenting Appellate Division judge noted, defendant was not the only occupant of his home capable of using the firearms registered

We concur with the trial court's finding that the search under the totality of the circumstances, was objectively reasonable, and the use of the flash-bang device did not render it otherwise. The deployment of the device was consonant with the purpose and terms of the knock-and-announce warrant. We, therefore, reverse the Appellate Division's determination that the officers' execution of the search warrant was unconstitutional by virtue of the deployment of the flash-bang device.

## VII.

In light of its ruling on the flash-bang issue, the Appellate Division majority did not address the second issue raised by this case: whether police waited a sufficient time after knocking on the door before entering the defendant's home.[8] When officers execute warrants that are subject to the knock-and-announce rule, they may enter a home " 'only after demanding admittance and explaining their purpose.' " *Robinson, supra,* 200 *N.J.* at 14, 974 *A.*2d 1057 (quoting *Fair, supra,* 45 *N.J.* at 86, 211 *A.*2d 359). When officers' announcement of their presence is

---

to his father. Moreover, a rule requiring police officers to execute knock-and-announce warrants when the suspect is absent would necessitate a search for the suspect, risking a potentially dangerous confrontation in a public setting.

[8] The Appellate Division majority decided an additional issue, holding that evidence collected from defendant's vehicles should be suppressed because the search warrant did not extend to vehicles. This issue was not raised by either party before the trial court or the Appellate Division panel. Accordingly, "an appellate court should stay its hand and forego grappling with an untimely raised issue." *Robinson, supra,* 200 *N.J.* at 21, 974 *A.*2d 1057; *accord Selective Ins. Co. of Am. v. Rothman,* 208 *N.J.* 580, 586, 34 *A.*3d 769 (2012); *State v. Arthur,* 184 *N.J.* 307, 327, 877 *A.*2d 1183 (2005). In any event, the record suggests that the only evidence that may have been recovered from a vehicle, rather than from the residence or from defendant's person, was one of the three police scanners yielded by the search. Thus, the question would have no bearing on the outcome, because defendant pled guilty only to drug-related charges; the charge of fourth-degree possession of a radio to intercept emergency communications while committing a crime, in violation of *N.J.S.A.* 2C:33–22, was dismissed.

"greeted with silence, . . . a reasonable time must elapse between the announcement and the officers' forced entry." *Johnson, supra,* 168 *N.J.* at 621, 775 *A.*2d 1273.

What constitutes a "reasonable time" is "necessarily vague," and contingent upon the circumstances of the specific case. *Robinson, supra,* 200 *N.J.* at 16, 974 *A.*2d 1057 (citations omitted) (quotations omitted); *accord Banks, supra,* 540 *U.S.* at 35–36, 124 *S.Ct.* at 525, 157 *L.Ed.*2d at 352. In *Robinson,* this Court held that a delay of twenty to thirty seconds between officers' knock and announcement and their forced entry was reasonable as they executed a search warrant for narcotics given "the potential for the destruction of evidence while entry was delayed[.]" *Robinson, supra,* 200 *N.J.* at 18, 974 *A.*2d 1057. The Court cited such factors as the "suspect's violent criminal history; an informant's tip that weapons will be present; the risks to officers' lives and safety; the size or layout of defendant's property; whether persons other than defendant reside there; whether others involved in the crime are expected to be present; and the time of day." *Id.* at 17, 974 *A.*2d 1057 (citations omitted).

Here, the trial court noted several factors supporting the objective reasonableness of the steps taken by police officers in this case: the officers' awareness that defendant was likely to have access to his father's weapons; surveillance showing CDS transactions at the residence; and the sequence of events as the search warrant was executed.

The trial court found that the first team of officers waited until defendant opened the overhead garage door. The officers then deployed the flash-bang device from their vehicle onto the driveway and repeatedly announced, "[p]olice, we have a search warrant" for approximately fifteen seconds before entering the garage through the open door. Defendant retreated into the open garage, pursued by the officers shouting "[p]olice, don't move. Police, don't move. Put your hands in the air. We have a search warrant." The trial court found that two officers then knocked and announced their presence and purpose for three or four

seconds before entering through the interior door from the garage into the house. It concluded that the second team of officers at the residence's front door knocked and announced their presence for about twenty-five to thirty seconds, and then attempted to break through the door with a battering ram. The court found that the second team's effort to break down the door was quickly halted by Lieutenant Fountain, who directed the officers to enter through the garage. From the interior of the first floor, the officers proceeded throughout the house in search of evidence.

We conclude that the trial court's factual findings regarding this sequence of events were supported by sufficient credible evidence in the record. *See Robinson, supra,* 200 *N.J.* at 15, 974 *A.*2d 1057; *Elders, supra,* 192 *N.J.* at 243, 927 *A.*2d 1250. We also conclude that those findings amply support the trial court's determination that the officers' conduct was objectively reasonable.[9] As the dissenting Appellate Division judge noted, well over twenty seconds elapsed between the officers' initial announcement of their presence and purpose and their entry into the interior of the residence. During that interval, both teams clearly and repeatedly announced that they were police officers executing a search warrant. In the setting of this case, given defendant's suspected access to weapons, the presence of a second individual and the officers' careful analysis of the risks, the officers' conduct was objectively reasonable, and did not violate defendant's right against unreasonable search and seizure. *See*

---

[9] In these circumstances, in which officers clearly announced their presence and defendant retreated into the garage, the officers were not required to then pause and knock before entering the garage through the open overhead garage door. *See United States v. Combs,* 394 *F.*3d 739, 744, *amended by* 412 *F.*3d 1020 (9th Cir.2005) (noting that under certain circumstances knocking "is not invariably required by the Fourth Amendment"); *accord United States v. Mendoza,* 281 *F.*3d 712, 716–17 (8th Cir.), *cert. denied,* 537 *U.S.* 1004, 123 *S.Ct.* 515, 154 *L.Ed.*2d 401 (2002); *United States v. Dunnock,* 295 *F.*3d 431, 435 (4th Cir.), *cert. denied,* 537 *U.S.* 1037, 123 *S.Ct.* 570, 154 *L.Ed.*2d 457 (2002); *United States v. Remigio,* 767 *F.*2d 730, 732–33 (10th Cir.), *cert. denied,* 474 *U.S.* 1009, 106 *S.Ct.* 535, 88 *L.Ed.*2d 465 (1985); *United States v. Harwell,* 426 *F.Supp.*2d 1189, 1201 (D.Kan.2006).

*Robinson, supra,* 200 *N.J.* at 17, 974 *A.*2d 1057; *Jones, supra,* 179 *N.J.* at 399–400, 846 *A.*2d 569; *Johnson, supra,* 168 *N.J.* at 620, 775 *A.*2d 1273.

Given our holding that the officers' execution of the warrant was constitutional, we do not reach the question of whether the exclusionary rule is the appropriate remedy for an unconstitutional execution of a knock-and-announce warrant under our State Constitution, an issue that has been addressed by the United States Supreme Court. *See Hudson, supra,* 547 *U.S.* at 593–94, 126 *S.Ct.* at 2164–65, 165 *L.Ed.*2d at 65–66.

## VIII.

The judgment of the Appellate Division is reversed, and defendant's conviction is reinstated.

Chief Justice RABNER, Justices ALBIN and HOENS, and Judges RODRÍGUEZ and CUFF (both temporarily assigned) join in Justice PATTERSON's opinion.

Justice LaVECCHIA filed a separate, dissenting opinion.

Justice LaVECCHIA, dissenting.

I firmly believe that hard and fast protocols for on-the-scene police activity are not appropriately set from the peaceful vantage that comes with subsequent judicial review. Law enforcement officers perform difficult tasks in oft-dangerous surroundings. Field officers should be supported for on-the-spot decisions made as events unfold that pose risk of harm to officers or to others. *See State v. Davila,* 203 *N.J.* 97, 102–03, 999 *A.*2d 1116 (2010) (recognizing protective sweep as among steps that police reasonably may take to protect themselves from harm in the performance of lawful duties).

That said, I find myself in disagreement with the majority in this appeal. The issuance of a search warrant does not give officers a license to execute the warrant in any manner they wish,

for doing so could lead to the unreasonable execution of the judicially authorized warrant. Evidence secured in such fashion has been excluded by this Court. *See State v. Johnson*, 168 *N.J.* 608, 616, 775 *A.*2d 1273 (2001) (excluding evidence secured by no-knock entry where such means of entry had not been authorized by warrant-issuing court, noting that "the method of an officer's entry into a dwelling is an element of the reasonableness inquiry under the Fourth Amendment" and New Jersey Constitution's analog (internal quotation marks omitted)). However, if on-the-scene danger arises to which the executing police may point, then police must be afforded flexibility to protect themselves and civilians at risk from that danger. I would agree that when the police can show that exigent and dangerous circumstances arise at the scene, the use of tactics to combat the danger, including surprise or the use of force, does not render execution of the originally issued knock-and-announce warrant unreasonable. *Id.* at 617–18, 775 *A.*2d 1273.

In this matter, a no-knock warrant was requested by the State and denied by the court. Instead, the court issued a knock-and-announce warrant. Nevertheless, the officers executing the warrant deployed a flash bang, which is a device that emits an intensely bright flash and a percussive, loud blast of sound. It has been called a percussion grenade. *See State v. Robinson*, 200 *N.J.* 1, 8, 974 *A.*2d 1057 (2009). The detonation of the flash bang in this matter occurred before the police knocked and announced their presence in the execution of the search warrant. No on-the-scene danger arose at the time of the warrant's execution—none at least to which the police have pointed or that the record reveals—that made the use of a flash-bang device the tactical decision that the State now labels it. Rather, the decision to use a flash bang appears to me, as it did to the Appellate Division majority, to have been a pre-planned activity that is dissonant with the reasonable execution of the knock-and-announce search warrant that had been issued.

The majority's decision is remarkable in that the Court goes further than any other in the country by finding the execution of a knock-and-announce search warrant to be reasonable where officers used a flash-bang device before even getting out of their cars. The Court is unable to cite to a single case, either federal or state, in which a flash-bang device was used *before* officers announced their presence in the execution of a knock-and-announce warrant. Respectfully, I must dissent.

I.

As the Appellate Division majority described the scene that unfolded in the execution of this search warrant, twelve police officers, some of whom were wearing helmets and protective gear, stormed defendant's driveway to execute a knock-and-announce warrant in a suburban neighborhood several blocks away from the police station. Notably, a police investigation had concluded that defendant lived with his two parents, one of whom was approaching the age of seventy and the other who was over seventy. At the time of the search, the garage door to the home was open, and defendant was standing outside on the driveway apron with an unidentified individual. In an effort to catch defendant in the act of dealing drugs, officers threw the flash-bang device onto the driveway. We are told that this was done in an attempt to draw defendant out of the garage, although the logic to that is far from clear.[1]

The scene resembled a military raid on a compound instead of a drug search in a suburban neighborhood. Indeed, a pre-raid analysis of the search concluded that the entry of the home, even taking into account the presence of firearms lawfully owned and registered by defendant's father, was in the lowest category of risk. As part of the preparation to execute the search warrant,

---

[1] Throwing a flash-bang device towards defendant when he already was standing outside the garage seems likely to cause exactly the opposite consequence than the one ostensibly sought by the police. In fact, it did result in defendant retreating into the garage.

the police completed a "risk assessment matrix," which uses a point system to evaluate the risk to police safety:

01–14 **Points** Service/execution may be handled by unit supervisor.

15–24 **Points** Consultation with the Monmouth County Emergency Response Team (MOCERT) Coordinator is required. MOCERT service of the warrant is optional.

25 plus **Points** Monmouth County Emergency Response Team (MOCERT) is required for service/execution of the warrant.

The point level assigned to the search warrant of defendant's home was nine points, putting the execution in the lowest category of risk. Nonetheless, the police decided to use the Emergency Response Team and a flash bang to execute the warrant.

Per the plan, twelve officers were divided into three teams. Team One consisted of five officers whose task was to throw a flash bang onto defendant's driveway, proceed to the garage, detain anyone present, and secure the rest of the first floor of the house. Team Two consisted of four officers whose task was to knock and announce their presence at the front door of the house and secure the second floor of the house. Team Three consisted of three officers who stayed behind the house to ensure that no one escaped.

The search warrant was executed in the afternoon on August 24, 2007. At the time, defendant was standing in front of the open garage with another individual. Team One threw the flash bang onto defendant's driveway and yelled "Police, search warrant. Police, we have a search warrant." As the police approached, the two men ran back into the garage. Team One pursued them with guns drawn and, without any real resistance, placed both men in handcuffs. Four officers from Team One then announced their presence and knocked on the garage door connected to the house for three or four seconds and proceeded to enter.

Meanwhile, just after Team One entered the house, Team Two announced their presence and knocked at the front door. After knocking for about three to four seconds, Team Two applied a battering ram to break down the door. Team One, already upstairs in the house securing defendant's sixty-nine-year-old mother, radioed Team Two to cease using the battering ram and

to enter through the garage door. After these events unfolded, defendant's father returned home from a walk in a local park.

Defendant filed a motion to suppress the evidence seized from the home. The motion was denied after a hearing in which defendant, his parents, and the officers involved in the search testified. Defendant entered a guilty plea to first-degree possession of LSD with intent to distribute, *N.J.S.A.* 2C:35–5b(6), and third-degree possession of prescription drugs with intent to distribute, *N.J.S.A.* 2C:35–5b(5). The remaining charges were dismissed. Defendant appealed, and in a split decision, the Appellate Division reversed, concluding that although the planned use of a flash bang might have been appropriate had a no-knock warrant been granted, its use was inconsistent with the reasonable execution of the knock-and-announce warrant that was issued. A dissent brought this matter to us as of right. *R.* 2:2–1(a)(2).

## II.

Our Court has not addressed whether the use of a flash bang is unreasonable in the execution of a knock-and-announce search warrant, although the Appellate Division has ventured into that territory. *See State v. Robinson,* 399 *N.J.Super.* 400, 415–17, 944 *A.*2d 718 (App.Div.2008) (finding use of flash bang to be inconsistent with reasonable execution of knock-and-announce search warrant in absence of showing of exigent circumstances when executing warrant), *rev'd on other grounds,* 200 *N.J.* 1, 974 *A.*2d 1057 (2009). In *Robinson,* this Court declined to address the use of a flash bang in the execution of a knock-and-announce search warrant. 200 *N.J.* at 22, 974 *A.*2d 1057. There, the police officers knocked and announced their presence, waited twenty to thirty seconds, breached the door, and deployed the flash bang. *Id.* at 11, 974 *A.*2d 1057. However, because the defendant's argument about the use of a flash bang was raised for the first time on appeal, we did not address the issue, *id.* at 21–22, 974 *A.*2d 1057, and thus made no determination as to its reasonableness, *ibid.*

There is a scarcity of law directly on point to flash-bang usage in connection with knock-and-announce warrants. However, several cases, including one New Jersey case, *State v. Fanelle,* 385 *N.J.Super.* 518, 897 *A.*2d 1104 (App.Div.2006), address the use of a flash bang in the context of a no-knock search warrant. That said, the majority does not cite to a single case, in either state or federal court, where police used a flash bang *prior* to knocking and announcing themselves.

In *Fanelle, supra,* the Appellate Division addressed whether use of a flash bang was reasonable in the context of a no-knock warrant. 385 *N.J.Super.* at 528, 897 *A.*2d 1104. There, police officers used a flash bang in the execution of a search warrant for drugs at a residence. *Id.* at 524, 897 *A.*2d 1104. However, the record was unclear as to how the device was used during the search, and therefore the panel remanded for factual findings. *Id.* at 533, 897 *A.*2d 1104. On remand, the Law Division held that the use of several flash bangs made the search unreasonable, finding that it was unnecessary to use the devices even in the context of a no-knock warrant. *State v. Fanelle,* 404 *N.J.Super.* 180, 192, 960 *A.*2d 825 (Law Div.2008) (on remand).

The Massachusetts Supreme Judicial Court also has addressed the use of a flash bang in the execution of a no-knock warrant. *Commonwealth v. Garner,* 423 *Mass.* 735, 672 *N.E.*2d 510 (1996). In that case, the police obtained a no-knock warrant to search the apartment of a man who had allegedly committed a rape and robbery. *Id.* at 511. According to another individual's statement, the man was armed with a sawed-off shotgun and another man involved in the crime had a handgun. *Ibid.* When executing the warrant, the police broke a window, threw the flash bang into a bedroom, and entered the home. *Id.* at 511. The court found that the use of the device in the execution of a no-knock warrant was reasonable given the safety risk posed by armed and dangerous criminals. *Id.* at 515.

Few federal circuit courts have addressed the use of a flash bang in the execution of a knock-and-announce search warrant.

In *United States v. Myers*, the police executed a search warrant
on a residence where it was suspected that the defendant was
running a large-scale marijuana operation. 106 *F*.3d 936, 938–39
(10th Cir.1997). The defendant had prior convictions for burglary,
theft, cocaine trafficking, and possession of a firebomb. *Id.* at 938.
The police knocked and announced, waited ten seconds, battered
down the door, and threw a flash bang into the living room. *Id.* at
939. The court reasoned that while the police "actions in this case
come dangerously close to a Fourth Amendment violation, we
cannot say their actions were objectively unreasonable given. . . .
[the defendant's] history of illegal drug trafficking, and . . . [his
prior conviction] for a fire bombing incident." *Id.* at 940.

The Seventh Circuit also has found no violation of the Fourth
Amendment prohibition against unreasonable searches in the use
of a flash bang in the execution of a knock-and-announce search
warrant where the device was deployed after entering the resi-
dence. *See United States v. Jones*, 214 *F*.3d 836, 838 (7th
Cir.2000) (finding that evidence should not be suppressed where
flash bang was used after entering residence based on inevitable
discovery doctrine); *United States v. Folks*, 236 *F*.3d 384, 388 (7th
Cir.2001) (same); *United States v. Morris*, 349 *F*.3d 1009, 1013
(7th Cir.2003) (same). However, in each of the Seventh Circuit
cases, the flash bang was used after the police officers properly
knocked, announced their presence, and waited before entering
the residence, throwing the flash-bang device to secure safe entry
into perceived dangerous premises. *See Jones*, 214 *F*.3d at 837;
*Folks*, 236 *F*.3d at 387; *Morris*, 349 *F*.3d at 1011.

The present case is distinguishable from all of the above state
and federal cases. Unlike those scenarios, the police officers here
used a flash bang before they even attempted to knock and
announce their presence when executing a warrant to search
defendant's home. The actual knocking and announcing that took
place at both doors to defendant's home came after officers
already had used the flash bang. The use of the device to create a
diversion before even knocking or announcing makes this search

resemble a surprise no-knock search. Importantly, the police here point to no perceived on-the-scene danger to which they were reacting in the execution of their approved knock-and-announce warrant. Had they done so, I would view this case differently and would be joining my colleagues in the majority.

On the other hand, if the police wished to avoid the requirement of knocking and announcing due to safety concerns known in advance, the State should have sought reconsideration from the warrant-issuing court or, as the Appellate Division noted, filed an emergent appeal on its application for a no-knock search warrant. The State chose not to do so. In fact, the State accepted the knock-and-announce warrant and put the execution of the warrant in the lowest category of risk on the risk assessment matrix, but still proceeded to use twelve police officers with a pre-planned flash bang before announcing its presence.

The police activity in this matter strikes me as excessive. In my judgment, the police execution of this warrant was performed using unreasonable means. The police knew that defendant lived with his elderly parents and was often engaging in drug transactions out in the open—in the driveway in front of his garage. While I acknowledge that defendant's father had licensed firearms in the residence, the police were still under an obligation to act reasonably when executing the knock-and-announce warrant. I therefore respectfully disagree with the majority that this search should be upheld.

As to the appropriate remedy, we have invalidated searches that were conducted by unreasonable means inconsistent with the knock-and-announce requirement. *See Johnson, supra,* 168 *N.J.* at 623, 775 *A.*2d 1273. This Court has not yet abandoned its decision in *Johnson,* which was premised on our interpretation of the requirements of the Fourth Amendment as well as our own State Constitution's analog. *See id.* at 625, 775 *A.*2d 1273. Although the United States Supreme Court recently decided not to apply the exclusionary rule to warrant violations in *Hudson v.*

*Michigan,*[2] our Court has not embraced *Hudson*'s approach to date. *See State v. Rodriguez,* 399 *N.J.Super.* 192, 205, 943 *A.*2d 901 (App.Div.2008) (opining that *Hudson* should not be adopted in this state). Until *Johnson* is reconsidered by this Court, I adhere to its protective approach when evaluating the reasonableness of a search warrant's execution. I therefore would apply the same remedy as in *Johnson:* suppression of the evidence.

### III.

For the reasons expressed, I respectfully dissent. I would affirm the judgment of the Appellate Division and suppress the evidence seized in this search.

*For reversal and reinstatement*—Chief Justice RABNER and Justices ALBIN, HOENS, PATTERSON, RODRÍGUEZ (t/a) and CUFF (t/a)—6.

*For dissent*—Justice LaVECCHIA—1.

---

[2] 547 *U.S.* 586, 599–602, 126 *S.Ct.* 2159, 2168–70, 165 *L.Ed.*2d 56, 69–71 (2006) (holding that exclusionary rule does not apply to knock-and-announce violations).