**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3967-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AARON T. SHEPPARD,

     Defendant-Appellant.

_____

Argued December 18, 2019 – Decided January 2, 2020

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Accusation No. 03-10-0811.

Michael James Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Thomas Gerard Hand and Michael James Confusione, on the briefs).

Dana R. Anton, Senior Assistant Prosecutor, argued the cause for respondent (Charles A. Fiore, Gloucester County Prosecutor, attorney; Monica A. Bullock, Assistant Prosecutor, and Dana R. Anton, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

This post-conviction relief (PCR) case returns to us after remand proceedings directed by our previous opinion. See State v. Sheppard, No. A-2079-09 (App. Div. July 12, 2011), certif. denied, 209 N.J. 97 (2012). On remand, the matter was assigned to Judge M. Christine Allen-Jackson, who conducted a four-day evidentiary hearing to address the issues identified in our decision. Judge Allen-Jackson denied defendant Aaron Sheppard's petition for PCR and explained the basis for her rulings in a comprehensive twenty-seven page written opinion containing her detailed findings of fact and conclusions of law.

Defendant appeals from the March 13, 2018 order memorializing the judge's decision, and presents the following arguments in the brief submitted by his appellate counsel:

> POINT ONE
>
> THE PCR COURT ERRED IN DENYING THE PETITION BECAUSE TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO INVESTIGATE [DEFENDANT'S] STATE OF MIND WHEN THE CRIME WAS COMMITTED, WHEN [DEFENDANT] WAS INTERROGATED AND WHEN SHEPPARD PLED GUILTY.

A-3967-17T1

A. Trial Counsel Was Deficient Because He Failed To Fully Investigate [Defendant's] State Of Mind At The Time [Defendant] Confessed.

B. Trial Counsel Was Deficient Because He Failed To Fully Investigate [Defendant's] State Of Mind At The Time [Defendant] Pled Guilty.

C. Trial Counsel's Deficient Performance Prejudiced [Defendant].

POINT II

[DEFENDANT'S] PLEA SHOULD BE WITHDRAWN BECAUSE HE MET THE REQUIREMENTS OF STATE V. SLATER, 198 N.J. 145 (2009).

In addition, defendant raises the following issues in his pro se supplemental brief:

Point 1

Defendant's convictions and sentence should be vacated on the ground of ineffective assistance of trial counsel.

Point 2

Trial judge Honorable Christine Allen-Jackson and Defense Attorney Fred Last, Esq. failed to apply the "Fruit of the Poisonous Tree Doctrine" while considering whether or not defendant knowingly, intelligently, and voluntarily waived his Fifth Amendment Right: Not To Be Compelled To Be a Witness Against Oneself (United States Constitution, Article IV).

3

Point 3

> [Judge] Allen-Jackson['s] denial concerning the <u>Slater</u> requirements was incorrect for not adhering to the legislators [sic] intent when considering the charge of felony murder in this cases [sic] applicability, and the outcome would have been different if not for the ineffectiveness of Fred Last allowing the defendant to plea [sic] out to a charge of felony murder without the factual basis to support the charge.

Based on our review of the record and the applicable law, we conclude that defendant's arguments lack merit. We affirm substantially for the reasons set forth in Judge Allen-Jackson's thorough decision.

## I.

The parties are fully familiar with the procedural history and factual background of this case, which was set forth in detail in our prior opinion. <u>Sheppard</u>, (slip op. at 1-8). As noted in that opinion, we

> remand[ed] this matter for the [trial] court to conduct a hearing to resolve what, if any investigation trial counsel conducted regarding defendant's mental capacity when each of the incriminating statements were made and at the time he entered a guilty plea. The court should determine whether counsel's conduct "was within the range of competence demanded of attorneys in criminal cases." In the event the court should find that counsel's conduct fell below that standard, the question remains whether the circumstances precluded a voluntary waiver of rights. Finally, the court should review defendant's motion to withdraw his guilty plea

A-3967-17T1

pursuant to <u>State v. Slater</u>, 198 N.J. 145 (2009) and [<u>Rule</u>] 3:21-1.

[<u>Id.</u> at 14.]

II.

We begin by addressing defendant's contention that Judge Allen-Jackson erred by determining that defendant's trial counsel was not ineffective for failing to file a <u>Miranda</u>[1] motion to challenge the admissibility of defendant's confession. By way of background, defendant stated he took heroin at approximately 4:00 p.m. after the victim was murdered that morning. The police apprehended him,[2] read him his <u>Miranda</u> rights, and attempted to interview him around 8:35 p.m. that same evening. The detective believed that defendant was under the influence and stopped the interview.

Just after midnight, the detective again attempted to interview defendant. After the detective read defendant his <u>Miranda</u> rights, defendant invoked his right to an attorney, and the interview was immediately terminated.

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[2] Defendant's pants were covered with blood splatter. He was also wearing bloody shoes, and the police found a shoe print at the murder scene that was similar to the distinctive soles of defendant's shoes. Defendant told the police, "[t]he evidence is all over me."

Around 12:40 a.m., defendant asked to speak to the detective, who again provided him with Miranda warnings. At that time, defendant admitted he entered a tire store early in the morning through a broken window to steal property and money. Once inside, he saw the sleeping victim and struck him six times with a tool after the victim stirred in his sleep. After killing the victim, defendant stole a camcorder and some money, took a bus to Camden, and sold the camcorder. Defendant then bought four bags of heroin, two for himself and two for a friend, who helped him sell the stolen camcorder.

At the hearing, defendant produced an expert psychologist, Dr. Edward Dougherty, who opined that defendant was too intoxicated at midnight, eight hours after he had consumed the heroin, to make a voluntary, knowing, and intelligent waiver of his Miranda rights. Dr. Dougherty arrived at this opinion after listening to the recording made of defendant's statement to the detective, taking note of his speech cadence.

In response, the State offered the testimony of Dr. Steven Simring, an expert psychiatrist. Dr. Simring opined that defendant's statements to the detective were coherent and "completely logical." Perhaps more significantly, Dr. Simring noted that defendant last took heroin at 4:00 p.m. in the afternoon and did not give his statement to the detective until approximately 12:40 a.m.

6

the next morning. According to Dr. Simring, this time frame was extremely important because

> heroin, like any other drug, has a half-life and has a dose response curve. It's well known that heroin, which is converted to morphine, will reach peak levels at about 30 minutes to an hour, will then last for somewhere between four and six hours. So, that using these rough calculations, assuming that [defendant] was accurate, that the last usage was at 4:00 p.m., one would expect him to still be high at 8:00 p.m. But by midnight, eight hours later, he would have been over that four to six hour period of time and he would have cleared. So that's a normal way of clearing heroin.

Thus, Dr. Simring testified that defendant was able to understand his Miranda rights and to execute a knowing, voluntary, and intelligent waiver of those rights when he was questioned for the third time at 12:40 a.m. Dr. Simring stated that his opinion was further corroborated by the details defendant included in his statement. Among many other things, defendant was able to recount how he knew the victim; remember that he discarded the dimes he found in the cash register, while taking only the quarters; and accurately describe the layout of the tire store. After listening to the interview tape herself, Judge Allen-Jackson concluded that Dr. Simring's opinion and testimony was much more credible than that offered by the defense expert.

7

The judge also considered the testimony of one of defendant's trial attorneys, Fred Last, Esq., a public defender with over thirty-five years of experience.[3]  Last explained that the State approached him with a plea offer before it submitted the case to a grand jury for indictment.  In return for pleading guilty to first-degree felony murder, the State agreed to recommend that the trial court sentence defendant to an aggregate sentence of thirty-five years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  Thus, rather than facing the possibility of the death penalty or a life sentence, defendant would be eligible for parole in thirty years.

Last testified that in his long experience, once the State proceeded to an indictment, and the case began to "go[] down the capital murder track, it [would be] much more difficult to get a better plea offer."  Thus, Last counseled defendant to strongly consider the State's plea offer.

In rendering this advice, Last considered whether to allow the State to indict defendant for capital murder, and then file a <u>Miranda</u> motion to attempt to suppress defendant's confession.  However, Last explained that such a motion would have "only a slim chance of success" because defendant appeared to be very coherent during the statement he gave to the detective over eight hours after

---

[3]  During that period, Last handled several capital murder cases.

consuming heroin or any other illicit substance. In this regard, Last reviewed the recording of defendant's confession and of the two attempted interviews that preceded it. According to Last, "[w]hen [defendant] started talking to them, when he asked to come back, and made most of the incriminating parts of his statement, it was as if somebody had flipped a switch and he was sober, at least in sound."

In addition, Last believed that the State did not need the confession to convict defendant of felony murder because the DNA evidence from defendant's bloody clothing and shoes would have been sufficient to prove its case beyond a reasonable doubt.[4] Thus, Last's strategy was to attempt to negotiate the best plea agreement he could on behalf of his client in a case where defendant would otherwise face the death penalty.

After considering this evidence, Judge Allen-Jackson concluded that Last's "recommendation to [d]efendant to take the plea was the product of sound trial strategy based on his professional evaluation of the case and negotiations with the State." Thus, the judge held that defense counsel was not ineffective

---

[4] Defendant's fingerprint was found on the stolen camcorder. Defendant also told Last that he may have accidentally recorded himself on the camcorder while he was taking it to Camden and "sooner or later someone's [going to] play what's on that cassette they recovered."

because he pursued the plea rather than a suppression motion that was unlikely to succeed and, in the final analysis, would not have significantly weakened the overwhelming physical evidence of guilt amassed by the State.

We discern no basis for disturbing the judge's reasoned analysis. When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); State v. Preciose, 129 N.J. 451, 459 (1992). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial,

a trial whose result is reliable." Ibid.  That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.  Because prejudice is not presumed, Fritz, 105 N.J. at 52, a defendant must demonstrate with "reasonable probability" that the result would have been different had he received proper advice from his trial attorney. Strickland, 466 U.S. at 694.

Moreover, the acts or omissions of counsel of which a defendant complains must amount to more than mere tactical strategy.  Id. at 689.  As the Supreme Court observed in Strickland,

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

11

[Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).]

Where, as here, the judge conducts an evidentiary hearing, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Additionally, we defer to a trial judge's findings that are "substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15).

Applying these principles, there is ample evidence in the record to support Judge Allen-Jackson's conclusion that Last made a well-calculated, tactical decision not to risk losing an advantageous plea offer by filing a Miranda motion that would likely be unsuccessful. In employing this strategy, Last tapped into his decades of experience, and determined that a motion judge would find that defendant was sober by the time he made his confession over eight hours after he had ingested heroin or any other intoxicating substance. This was corroborated by the minute details defendant was able to recall about the murder and all the events leading up to it, together with his later efforts to sell the camcorder. Defendant knew he had the right to counsel and, indeed, invoked

that right around midnight, before deciding to voluntarily waive it forty minutes later.

In ruling that defense counsel was not ineffective, Judge Allen-Jackson also properly determined that Last's decision was amply supported by Dr. Simring's expert testimony. "[W]e rely on the trial court's acceptance of the credibility of the expert's testimony and the court's fact-findings thereon, [and note] that the trial court is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded [the] testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)).

In addition, even if defense counsel should have foregone the plea offer that eliminated the possibility of defendant receiving the death penalty or a life sentence in favor of pursuing a Miranda motion, defendant still failed to meet the second prong of Strickland. This is so because, even if the confession was suppressed, the State still had very strong physical evidence connecting defendant to the crime. Thus, defendant did not demonstrate with reasonable probability that the end result of this proceeding would have been different. Strickland, 466 U.S. at 694.

Therefore, we reject defendant's contention that defense counsel provided ineffective assistance by pursuing a plea agreement rather than filing a <u>Miranda</u> motion.

### III.

Defendant next argues that Judge Allen-Jackson erred by ruling his attorney was not ineffective due to his alleged failure to adequately investigate his state of mind at the time he pled guilty. We disagree.

While defendant was in jail awaiting the consummation of his plea agreement, he was prescribed Seroquel, a psychotropic drug that also had the effect of making the patient sleepy. Defendant told Dr. Dougherty, and testified at the hearing, that he was so sleepy and dizzy from taking this drug that he was unable to voluntarily waive his right to a trial by pleading guilty to felony murder in order to avoid the death penalty or a life sentence. He asserted that Last should have investigated the effect this drug would have on him and, if Last had done so, he would have prevented defendant from proceeding with the plea.

However, Last testified he was very familiar with this drug and its effects because a number of his clients were prescribed it. Thus, even though Last readily conceded he was not an expert in this area, he did not see a need to

14

conduct a "formal investigation" into the behaviors demonstrated by patients who take Seroquel.

Last testified that in his discussions with defendant leading up to the entry of the plea,[5] he did not observe "any signs of unusually slow mentation or drowsiness, dop[i]ness or any of those features" that would have led him to postpone the plea hearing. There was also no evidence of a lack of understanding or disoriented thinking on defendant's part during the plea proceedings. Last testified that if he had thought defendant was impaired, he would not have proceeded to put through the plea. However, defendant showed no signs of impairment.

Last's view of his interactions with defendant was corroborated by Dr. Simring, who testified that Seroquel would not have adversely affected defendant's ability to understand the plea proceedings. Judge Allen-Jackson again found that Dr. Simring's expert testimony on this subject was more credible than that of defendant's expert, and we again defer to her determination on this point.

The judge concluded there was

> insufficient evidence in the record to conclude that . . .
> defendant was impaired at the time of the plea. He was

---

[5] Last met with defendant approximately six times prior to the plea hearing.

A-3967-17T1

responsive to questions; he further indicated that he went over the plea form with his attorney, who assisted in circling his answers to the questions on the plea form. There is no evidence of disoriented thinking, lack of understanding[,] nor [any] evidence of off[-]base answers at the time of the plea.

Thus, the judge concluded that "[t]he effects of the Seroquel did not interfere with [defendant's] ability to make a knowing, intelligent and voluntary plea." Because there is sufficient credible evidence in the record to support this determination, we perceive no basis for disturbing it. Defense counsel was aware that Seroquel could make a patient sleepy and, accordingly, Last knew to observe defendant during their discussions for any sign of this side effect. Detecting none, Last was not required to conduct a further investigation into defendant's condition before consummating the plea. And, in any event, the credible expert testimony at the hearing demonstrated that Seroquel would not have prevented defendant from making a knowing plea, as evidenced by his straight-forward answers to all questions posed to him at that proceeding. Because defendant thus failed to establish either prong of the Strickland test, we affirm Judge Allen-Jackson's conclusions on this point.

IV.

Finally, defendant argues that the judge erred by denying his motion to withdraw his plea under Slater. Again, we disagree.

16

Slater requires a court to weigh the following factors in considering a motion to withdraw a plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 158-59. A motion to withdraw a guilty plea is committed to the judge's sound discretion. Slater, 198 N.J. at 156. We will only overturn a judge's decision if there was an abuse of discretion causing the decision to be clearly erroneous. Ibid.

Judge Allen-Jackson found that defendant did not "assert a colorable claim of innocence." In addition to confessing to murdering the victim during the course of a burglary, defendant was covered in the victim's blood and had left a distinctive footprint with his bloody shoe.

Defendant's reasons for attempting to withdraw his plea were also weak. Defendant claimed he would not have pled guilty if he was not under the influence of Seroquel. As discussed above, however, defendant failed to establish that this prescribed medication affected his ability to understand the terms of the plea offer and to voluntarily accept them.

17

Turning to the third <u>Slater</u> factor, the judge noted that defendant pled guilty and avoided the death penalty or a life sentence. Finally, the judge found that the offense occurred in 2003, over fourteen years before her decision on defendant's motion to withdraw his plea. In that time, she noted that "[m]emories fade, and witnesses retire and move away and become unavailable, which would be an unfair disadvantage to the State in proving its case."

Under these circumstances, where defendant failed to satisfy any of the <u>Slater</u> factors, we conclude that the judge properly denied defendant's motion to withdraw his guilty plea.[6]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] The arguments raised in defendant's pro se supplemental brief largely parrot the points raised by his appellate counsel. Defendant's supplemental contentions are clearly without merit and do not warrant further discussion. <u>R.</u> 2:11-3(e)(2).