**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3818-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TIMOTHY L. ROSS, a/k/a ROSS
TIMOTHY L, LEVI JAMES,
TIMOTHY LEVI, JAMES ROSS,
SHOTGUN, and TODD WRIGHT,

    Defendant-Appellant.

_____

> Submitted May 11, 2020 – Decided July 13, 2020
>
> Before Judges Rothstadt and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Accusation No. 18-01-0032.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Alyssa A. Aiello, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Timothy L. Ross appeals from his conviction for second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1). He pleaded guilty to both charges, reserving the right to appeal the trial court's orders denying his motion to suppress the out-of-court identification made by the victim he shot and admitting, under N.J.R.E. 404(b), evidence of threats defendant made to the victim shortly before the shooting. He argues on appeal:

POINT I

THE TRIAL COURT ERRED IN RULING THAT THE IDENTIFICATION EVIDENCE WAS ADMISSIBLE.

    A.    The Henderson[1] Framework For Testing The Admissibility Of Out-Of-Court Identifications.

    B.    The Recordation Requirements Under Delgado[2] And Rule 3:11.

    C.    [The Detective's] Failure To Record The Exchange He Claimed To Have Had With [The Victim] Regarding Confirmatory

---

[1] State v. Henderson, 208 N.J. 208 (2011).

[2] State v. Delgado, 188 N.J. 48 (2006).

Feedback Was A Clear Violation Of Delgado And Rule 3:11.

D. [Defendant's] Inability to Establish Suggestiveness, Which Resulted From [The Detective's] Flagrant Violation Of The Recordation Requirements, Did Not Support The Trial [c]ourt's Ruling That The Photo Identification Was Admissible.

E. Because The Police Presented A Record Bereft Of Details As to Whether [The Detective] Asked [The Victim] About Confirmatory Feedback, And If So, What She Said, And Because [The Detective's] Violation Of The Recordation Requirement Was Part Of A Pattern Of Flagrant Police Misconduct, The Identification Evidence Should Be Stricken. In The Alternative, The Matter Must Be Remanded For A Hearing At Which [Defendant] Is Free To Explore The Full Range Of Estimator And System Variables That Bear On Admissibility.

POINT II

THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION TO ADMIT TESTIMONY FROM [THE VICTIM] AND HER BROTHER THAT [THE VICTIM] FELT THREATENED AND AFRAID DURING PRIOR ENCOUNTERS WITH [DEFENDANT].

We disagree and affirm.

A-3818-17T4

Further to defendant's request for a pretrial hearing to challenge the victim's identification of defendant, the trial court granted a Wade[3] hearing, and heard testimony from the New Brunswick Police Department major crimes unit detective who investigated the shooting that took place on Remsen Avenue in New Brunswick. As we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record," State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)), we glean the pertinent facts from the trial court's written decision. "Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gonzales, 227 N.J. 77, 101 (2016) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). A "trial court's findings at the hearing on the [reliability and] admissibility of identification evidence are 'entitled to very considerable weight.'" State v. Adams, 194 N.J. 186, 203 (2008) (quoting State v. Farrow, 61 N.J. 434, 451 (1972)). "To the extent that the trial court's determination rests upon a legal conclusion, we conduct a de novo, plenary

---

[3] United States v. Wade, 388 U.S. 218 (1967).

review." Rockford, 213 N.J. at 440; see also State v. Gandhi, 201 N.J. 161, 176 (2010).

Sixteen days after the victim was shot, the detective went to the hospital to which the victim was admitted and ascertained from her that she was able to participate in a photographic array. He had attempted to speak to the victim "various times" before that date but was prevented because of the victim's injuries and condition. From the detective's testimony, the trial court described "the victim who had 'around [eighteen] holes in her,' [as] close to death and extremely fragile for many days. The [d]efense acknowledged that the victim underwent several medical procedures which made her unavailable to police."

The detective returned to the hospital later that day with another detective who acted as the "blind administrat[or]" for the array.[4] See Henderson, 208 N.J. at 248 (holding an "identification may be unreliable if the lineup procedure is not administered in double-blind or blind fashion. Double-blind administrators do not know who the actual suspect is. Blind administrators are aware of that

_____

[4] The trial court did not specify the exact role the administrator played. During the identification procedure, the administrator told the victim he was going to let the detective "go over . . . any other issues with [her] in regards to the case [be]cause [he did not] know anything about it[.]" Whether the administrator was a "blind administrator" or "double-blind administrator" does not impact our decision. Defendant does not challenge the administrator's status.

A-3818-17T4

information but shield themselves from knowing where the suspect is located in the lineup or photo array").  Although the photo array procedure, including the victim's selection of defendant's photograph, was recorded, defendant argues the State's failure to record the completion of the photo array eyewitness identification procedure worksheet (worksheet),[5] specifically question sixteen, violated our Supreme Court's mandate regarding the need to make a record of identification procedures, citing Rule 3:11, Delgado and Henderson.

The worksheet contains twenty-six questions.  The worksheet instructions promulgated by the Attorney General, addressing question sixteen, direct the administrator to "ask the witness whether he or she has spoken to anyone (law enforcement or civilian) about the identification."  The detective disregarded that instruction and filled out parts of the worksheet, including question sixteen, because he wanted to save the administrator time as the photo array procedure

---

[5]  "In October 2012, after the promulgation of Rule 3:11, the New Jersey Attorney General issued a revised model worksheet directing police officers to 'document as detailed an account as possible of the exact words/gestures used by the witness' during the photographic identification process."  State v. Anthony, 237 N.J. 213, 243 (2019) (Albin, J., dissenting) (quoting Office of the Attorney General, Photo Array Eyewitness Identification Procedure Worksheet 1-3 (Oct. 1, 2012), https://www.state.nj.us/lps/dcj/agguide/Eye-ID-Photoarray.pdf.).

took more time than it would have if it was conducted at the police station instead of the hospital.

Further, the detective completed question sixteen, checking off the box signifying an affirmative answer to the question, based on a conversation he had with the victim during his initial meeting with her on the day of the photo array procedure, before returning with the administrator. He did not bring a worksheet to the initial meeting because he wanted to first learn if the victim was able to participate in the identification procedure. After establishing her ability, the detective testified he "most probably" asked the victim if she spoke to anyone about the identity of the person who shot her. He said the victim denied having any such conversation because had she said "yes," he would not have conducted the photo array.

Defendant avers the victim's family members and friends influenced her identification of defendant during their visits to the hospitalized victim prior to the photo array procedure. He also contends the detective's answer to question sixteen is ambiguous because he did not state the victim's response verbatim and did not record his conversation with her, thus depriving defendant of the ability to establish the suggestiveness of the procedure. He seeks suppression of the identification because of the detective's failure to record his colloquy with the

victim, and because the detective—not the administrator—completed a portion of the worksheet and had the administrator sign the worksheet even though the detective completed some questions.

Addressing first whether law enforcement officers are required to electronically record the completion of the worksheet, we start with the Court's mandate in Delgado "that, as a condition to the admissibility of an out-of-court identification, law enforcement officers [must] make a written record detailing the out-of-court identification procedure, including the place where the procedure was conducted, the dialogue between the witness and the interlocutor, and the results." 188 N.J. at 63. The Court directed, "[w]hen feasible, a verbatim account of any exchange between the law enforcement officer and witness should be reduced to writing. When not feasible, a detailed summary of the identification should be prepared." Ibid.

In Henderson, the Court recognized that, among the variables to be considered in determining "whether there is evidence of suggestiveness to trigger a hearing," is if "the witness receive[d] any information or feedback, about the suspect or the crime, before, during, or after the identification procedure[,]" and, as a prelude to question sixteen, if "law enforcement

elicit[ed] from the eyewitness whether he or she had spoken with anyone about the identification and, if so, what was discussed[.]" 208 N.J. at 289-90.

Spawned by <u>Henderson</u> and <u>Delgado</u>, <u>Rule</u> 3:11(a) precludes admission of an identification "unless a record of the identification procedure is made," <u>Anthony</u>, 237 N.J. at 228-29. Officers must

> contemporaneously record the identification procedure in writing, or, if feasible, electronically. If a contemporaneous record cannot be made, the officer shall prepare a record of the identification procedure as soon as practicable and without undue delay. Whenever a written record is prepared, it shall include, if feasible, a verbatim account of any exchange between the law enforcement officer involved in the identification procedure and the witness. When a written verbatim account cannot be made, a detailed summary of the identification should be prepared.[6]
>
> [<u>Id.</u> at 229 (quoting <u>R.</u> 3:11(b)).]

The <u>Rule</u> specifies that

> the record . . . should detail (2) the dialogue between the witness and the officer who administered the procedure . . . and (8) the identity of any individuals with whom the witness has spoken about the identification, at any time before, during, or after the official identification procedure, and a detailed

---

[6] Although <u>Rule</u> 3:11(b) and (c) were amended effective June 8, 2020, we apply the version of the <u>Rule</u> that was in effect when the trial court decided defendant's motion to suppress the out-of-court identification. The amendments do not change our conclusion.

summary of what was said. This includes the identification of both law enforcement officials and private actors who are not associated with law enforcement.

[Ibid. (quoting R. 3:11(c)(2) and (8)).]

In Anthony, the Court seemingly distinguished between the recording of an identification procedure and the written forms "that documented important information about the process." Id. at 236. The Court concluded the officers failed to comply with Rule 3:11 or Delgado "in full" because "[t]hey did not prepare an electronic recording of [the witness's] out-of-court identification of [the] defendant. They also did not prepare a contemporaneous, verbatim written account of the exchange between [the witness] and the officer who administered the photo array." Id. at 235 (emphasis added). The Court recognized that, although the written forms memorialized certain aspects of the procedure, "[r]eliance on the forms alone . . . did not create an adequate record in other respects. There [was] no electronic recording or contemporaneous, verbatim written account of the exchange during the identification procedure." Id. at 236. The Court was concerned that

> without a recording of the full exchange, or an opportunity to explore it at a hearing, it was not possible to know ahead of trial whether more subtle positive feedback was given, even if well-meaning. Similar concerns potentially apply to the conversation

10

between [the investigating detective—not the administrator—and the witness], for which the record does not contain a detailed summary consistent with Rule 3:11(c)(8).

[Id. at 237.]

Thus, it appears the Court differentiated between a recorded identification procedure and the associated written forms, both of which serve to accomplish the goal of preserving the exchange between police and witness so as to assess the reliability of the identification. See Delgado, 188 N.J. at 63. Indeed, the Court recognized in its March 13, 2019 decision, "[p]rior case law calls for electronic recording of identification procedures, if feasible." Anthony, 237 N.J. at 230; see also Delgado, 188 N.J. at 63 (stating that "electronic recordation is advisable"). "The [then] current court rule follow[ed] that approach. It favor[ed] electronic recording and verbatim written recordings, both of which are superior to detailed written summaries." Anthony, 237 N.J. at 230.

The Court, however, noted "the proliferation of recording devices in recent years," and deemed electronic recording as the preferred method for identification procedures. Ibid. The Court delineated its preferences:

> To more clearly state the order of preference for preserving an identification procedure, Rule 3:11(b) should be revised along the following lines: Officers are to record all identification procedures electronically in video or audio format. Preferably, an audio-visual

A-3818-17T4

record should be created. If it is not feasible to make an electronic recording, officers are to contemporaneously record the identification procedure in writing and include a verbatim account of all exchanges between an officer and a witness. If a contemporaneous, verbatim written account cannot be made, officers are to prepare a detailed summary of the identification as soon as practicable.

[Id. at 231.]

Neither the detective nor the trial court had the benefit of the Court's most recent guidance when this motion was decided in 2017. Nonetheless, we find thin the detective's explanation, adopted by the trial court in excusing the recording, that he was not expecting to conduct an identification procedure when he first went to the hospital to meet with the victim on the day the identification took place, and did not bring the worksheet; he, thus, could not contemporaneously record the victim's response that she did not discuss the identity of the shooter with anyone. Nothing prevented the administrator from complying with the Attorney General's instructions and completing the worksheet with the victim. And, despite the detective's disregard of those instructions, nothing prevented him from asking the victim question sixteen after the identification was made. Because the identification proceeding was captured on video, there was no reason why the completion of the worksheet could not be so recorded. Although there was perhaps no mandate to record the completion

A-3818-17T4

of the worksheet, common sense dictates that was the preferable method to capture the victim's responses, even before the Court's clarification in <u>Anthony,</u> and the subsequent <u>Rule</u> change. We further note our disapproval of the administrator's signature on the worksheet even though the detective filled out a portion of it.

Nonetheless, we agree with the trial court that suppression of the identification was not warranted under the circumstances of this case. The entire identification procedure was recorded. As the trial court found, there is no evidence of any feedback or suggestion on that recording. The only variable defendant cites is the taint evidenced by the visits by the victim's family in the hospital, the "word on the street" that defendant was the shooter, and the victim's brother's theory that defendant was the shooter. The trial court found that the victim was debilitated from her serious injuries and "may not have been in a condition to communicate with her friends and family during that period." More so, as the trial court found, there was no evidence that the victim spoke to anyone before the identification about the shooter's identity. We agree with the trial court that defendant's proffer that someone spoke to the victim in advance of the identification is notional. Defendant did not identify any private actor's suggestive words or conduct. <u>Cf. State v. Chen</u>, 208 N.J. 307, 322 (2011).

A-3818-17T4

We also discern the victim—who said during the recorded identification proceeding that she could not use her injured right hand to write—initialed the photograph display result form attached to defendant's appendix. Two of the printed representations—read aloud to the victim by the administrator during the recorded proceeding—with which the victim agreed were: "I was not told by anyone whether others had selected any particular photograph or failed to select any one. I was not told by anyone the status of identity of any of the individuals in the photographs."

Moreover, the trial court conducted a Wade hearing. Although defendant now contends if the identification is not suppressed he is entitled to a hearing to explore the variables described in Henderson, 208 N.J. at 218, he had a full opportunity to do so at the initial hearing. The trial court granted his request for a hearing. As the Henderson Court ruled, "all relevant system and estimator variables [are allowed] to be explored and weighed at [such] pretrial hearings[.]" 208 N.J. at 288 (emphasis omitted). In order to meet his ultimate burden of proving "a very substantial likelihood of irreparable misidentification," defendant could have "cross-examine[d] eyewitnesses and police officials and present[ed] witnesses and other relevant evidence linked to system and estimator variables." Id. at 289. That included calling the victim who could have testified

about her answer to question sixteen.  Defendant is not entitled to a second bite of the apple.

The record on appeal pertaining to defendant's second argument that "the trial court erred in ruling that [the victim] and her brother could testify that [the victim] felt threatened and afraid of [defendant]" also reveals a fact not adduced to the trial court until November 2017, around a month before trial was set to begin:  "specific information regarding the [v]ictim's earlier interactions with [d]efendant[.]"[7]  Over three months passed between defendant's request for a <u>Wade</u> hearing and the November 2017 hearing before the trial court was informed of specific prior encounters between defendant and the victim.  At the November 27, 2017 hearing, the assistant prosecutor admitted an alleged threat by defendant that the State sought to introduce pursuant to N.J.R.E. 404(b), "wasn't flushed out . . . by the detectives and [he had not] prepped [the victim] for testimony [and was] not able to flush out in great detail . . . how deeply the threat went."  From the victim's testimony at the evidentiary hearing on the State's N.J.R.E. 404(b) application in early January 2018, the trial court found the victim "had known [d]efendant for a month prior to" the shooting, speaking

---

[7] Defense counsel generally alluded that the victim knew defendant during the August 2017 request for a <u>Wade</u> hearing, stating defendant was "the only person [the victim] knew in the array, or ever had contact with in the array[.]"

to him "on the phone twice, and [meeting] with him in person three or four times" in order to consummate a transaction for drugs that the victim planned to sell. The court continued its findings:

> On one of these occasions, [d]efendant asked her to sell crack cocaine for him in his territory, which was on Seaman and Lee Avenue. The [v]ictim believed that [d]efendant made this offer because of the amount of money she was bringing to him and her good reputation as a drug dealer. The [v]ictim declined this offer. Defendant threatened her stating that if she was not going to sell for him, she could not sell in his territory. Approximately two weeks after this encounter, the [v]ictim saw [d]efendant as she was leaving His and Hers Clothing Boutique. According to the [v]ictim[, d]efendant seemed angry and upset, when he asked her, "[d]o you remember me?" The [v]ictim felt as though this question was a threat going back to the previous encounter in which he warned her not to sell in his territory.

While we do not rely on evidence of those prior encounters in determining whether defendant's motion to suppress the identification was properly granted because the State did not present that evidence at the identification suppression hearing, see State v. Wilson, 178 N.J. 7, 17 (2003) (declining "to infer proofs that were not presented expressly before the trial court"), we note such evidence exists and would surely be introduced if we deemed a remand was appropriate, greatly bolstering the reliability of the victim's identification.

16

Under Rule 3:11(d), the trial court had the discretion to "declare the identification inadmissible, redact portions of the identification testimony, and/or fashion an appropriate jury charge to be used in evaluating the reliability of the identification" if it found the record of the identification prepared by the State "lacking in important details as to what occurred at the out-of-court identification procedure . . . if it was feasible to obtain and preserve those details[.]" Although we look askance at the detective's failure to adhere to the letter of the Attorney General's instruction and the spirit, if not the letter, of the Court's recording mandate, under the circumstances of this case, we see no abuse of discretion in allowing in denying defendant's motion to suppress. See Henderson, 208 N.J. at 289 (holding the trial court enjoys the discretion to determine whether an identification is reliable).

Defendant also contends the trial court abused its discretion in allowing the State to introduce defendant's prior threats to the victim as proof of defendant's motive and intent. Defendant argues the evidence does not reveal that defendant directly threatened the victim; the trial court erroneously admitted the evidence based on the victim's subjective belief that defendant's words were a threat, speculating that his remarks related to protecting his drug territory from

the victim's continued drug sales in that area; and the motive was robbery as originally charged in the indictment.[8]

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). The trial court's rulings will "be upheld 'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted. '" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)); see also State v. Fortin, 189 N.J. 579, 597 (2007).

The trial court considered the evidence under the four-prong test adopted by our Supreme Court in State v.Cofield, "to avoid the over-use of extrinsic evidence of other crimes or wrongs[.]" 127 N.J. 328, 338 (1992). The test

---

[8] The indictment handed down against defendant charged him with first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); first-degree robbery, N.J.S.A. 2C:15-1 (count three); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five). Defendant pleaded to an accusation. The indictment, and another charging second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b), was dismissed pursuant to the plea agreement.

requires "the evidence . . . be: (1) admissible as relevant to a material issue, (2) similar in kind and reasonably close in time to the act alleged, (3) clear and convincing, and (4) of sufficient probative value not to be outweighed by its apparent prejudice." State v. Krivacska, 341 N.J. Super. 1, 39-40 (App. Div. 2001).

The trial court considered the victim's conversation with defendant—after she declined defendant's offer for her to work for him selling drugs—about her drug sales in his territory, and the subsequent encounter when he asked if she remembered him; the court determined them relevant to defendant's motive and intent for shooting the victim after defendant's warning not to sell drugs in his territory. The trial court, in finding the second prong was met, found the prior encounters between the victim and defendant took place "just weeks before the shooting[.]" The trial court credited the victim's testimony at the N.J.R.E. 104 hearing on the state's motion, and found the details presented by the victim, and her demeanor and candor on the stand presented clear and convincing evidence of the threats. The trial court concluded "[t]he [v]ictim's testimony at the [N.J.R.E.] 104 hearing made it clear that not only did . . . [d]efendant and the [v]ictim know each other prior to the shooting, but . . . they had previous encounters and dealings, giving him a motive to harm her because she was

encroaching on [d]efendant's territory." The court found the evidence probative as it was the only evidence to prove defendant's motive and intent. The court recognized the obvious prejudice inherent in evidence that defendant was alleged to be a threatening drug dealer, and prohibited the State from introducing the victim's testimony "as to the extent of [d]efendant's drug[-]dealing activities and/or his interactions with other[s] in regard to drug distribution." The court also stated it would instruct the jury as to the limited use of the evidence.

We affirm the trial court's admission of the evidence substantially for the reasons it set forth in its written opinion. We add only that we find meritless defendant's argument that the court based its decision on the victim's belief that he threatened her. Defendant's words and conduct, in context, were reasonably and objectively found by the court to be threats. The admission of the evidence based on the trial court's careful consideration of the Cofield factors, and subject to the proposed limiting instruction, was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3818-17T4