**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3736-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHN RAMIREZ, a/k/a JUAN
RAMIREZ, JOHN R. IREZ,
JUAN R. RAMIREZ and
BLESSED JOHN JOHN,

    Defendant-Appellant.

_____

Submitted March 12, 2024 – Decided March 18, 2024

Before Judges Haas and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 13-07-0593.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen

Christopher Sayer, Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

Defendant John R. Ramirez appeals from the Law Division's June 8, 2022 order denying his petition for post-conviction relief (PCR). We affirm in part, reverse in part, and remand for further proceedings.

I.

We incorporate herein the procedural history and facts set forth in our decision affirming defendant's convictions and sentence on direct appeal in State v. Ramirez, No. A-0060-14 (App. Div. Jan. 12, 2018) (slip op. at 3-10), certif. denied, 233 N.J. 366 (2018). The following facts are pertinent to the present appeal.

After midnight on the morning of the offenses involved in this case, Octaviano Contreras, Luis Reyes-Quinones, and Adrian Nolasco-Cruz were drinking beer on a porch. Id. at 3. Two men approached them. Id. at 4. One of the men was dressed in grey and the other was in black. Ibid. The man wearing black demanded that the men on the porch turn over their money and he threatened them with a gun when they refused. Ibid. The men on the porch began handing over their property. Ibid. However, Contreras told the man in black to "'[s]top playing with that pistol' and hit his gun wielding hand." Ibid.

(alteration in original). "The gun fired, shooting Contreras in the face at close range." Ibid. Contreras died at the scene. Id. at 6.

The man in grey fled. Ibid. Reyes-Quinones gave the man dressed in black two twenty dollar bills. Ibid. The shooter ordered Reyes-Quinones to search Contreras' pockets for more money but he found none. Ibid. The shooter then ran into a yard across the street. Ibid.

Nearby, Officer Joseph Cooper was investigating a separate report of a suspicious person in the area. Ibid. Cooper saw a man wearing a black hooded sweatshirt and black pants standing in front of a house. Ibid. The man matched the description of the reported suspicious person. Id. at 5. Cooper ordered the man to stop, but the man fled into an open garage. Ibid. Cooper later identified the man he saw as defendant. Id. at 6-7.

Cooper ran to his car to get a flashlight and returned to the driveway where he had seen defendant. Id. at 5. He saw that defendant was now climbing over a fence in the back of the house. Ibid. At this point, Reyes-Quinones and Nolasco-Cruz approached Cooper and began yelling and pointing at defendant. Ibid. The two victims then led Cooper back to Contreras' body. Id. at 5-6.

More officers arrived at the scene. Id. at 6. One of the officers saw defendant break into the back door of a house and go inside. Ibid. The officers

pursued defendant into the house.  Ibid.  They found defendant, sitting on a bathroom toilet, wearing only his underwear.  Ibid.  He was extremely sweaty. Ibid.  The officers arrested defendant and removed him from the house.  Ibid.

During the arrest, the police found a "'pile of clothing'" on the floor of a bedroom a few feet from where the officers were restraining defendant.  Ibid. The police found a dark pair of pants and a black hooded sweatshirt in the pile. Ibid.  The clothing was "'damp'" and "'moist.'"  Ibid.  One of the officers also found "'a wave cap' wrapped around four live .357 caliber bullets protruding from the pants pocket."  Ibid.

The police applied for a search warrant.  Ibid.  The police found three twenty dollar bills and a cell phone lying in the driveway where defendant ran into the garage, a .357 caliber revolver inside the garage, and a black and gold baseball cap near the handgun.  Id. at 7-8.  The handgun had five live rounds and one spent shell in the chamber.  Id. at 8.

The State's fingerprint comparison expert found defendant's fingerprint on the barrel of the handgun.  Id. at 9.  The State's "ballistics expert testified that the bullet recovered from Contreras' autopsy was fired from the handgun."  Ibid. In the presence of police officers, defendant also made spontaneous statements

A-3736-21

"that 'his life was over'" and "that 'he let his children down' and that 'this would not have happened if he didn't get into an argument with his girl.'" Id. at 8.

Following a multi-day trial, the jury found defendant guilty of first-degree aggravated manslaughter as a lesser included offense of murder, first-degree felony murder, first-degree robbery, fourth-degree aggravated assault with a firearm, second-degree possession of a weapon for an unlawful purpose, and second-degree unlawful possession of a weapon. Id. at 1. The trial court sentenced defendant to an aggregate extended term of life imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Ibid.

II.

After we affirmed defendant's convictions and sentence, he filed a timely petition for PCR. On June 10, 2020, the PCR judge conducted oral argument by Zoom on defendant's petition. The hearing lasted thirty minutes.

At the beginning of the subsequently-prepared transcript, the transcriber noted: "(Whereupon the hearing, conducted via Zoom, causing some inaudibility to statements throughout due to recording quality, commenced at this time at 1:05:13 p.m., as follows)." By our count, there were forty-six instances where the recording was "inaudible." We are unable to decipher how much of the argument and the judge's decision were lost due to the forty

5

separately-identified "recording issues" that occurred during the short proceeding.

Defendant raised five arguments in support of his petition. The only one that was not affected by the inaudibility issues was defendant's first argument in his hearing brief and at oral argument. In Point I of that brief, defendant argued that his trial attorney was ineffective because he failed to stick to the defense he and defendant had agreed upon while preparing for the trial. Defendant was originally charged with first-degree murder. However, defense counsel told defendant it was likely the State would obtain a superseding indictment adding a first-degree felony murder count. Because defendant insisted he was not present at the scene and had nothing to do with Contreras' murder, defendant and his attorney planned to argue that the State had misidentified him as the shooter.

When the State obtained the superseding indictment and the matter proceeded to trial, defendant argued that his attorney should have continued to make this same argument. However, defendant alleged that in defense counsel's summation to the jury, the attorney also argued that even if defendant was present at the scene, he did not intentionally shoot the gun that killed Contreras.

6

Instead, defendant claimed the gun could have gone off by accident when Contreras hit the shooter's hand.

According to defendant, this defense might have been appropriate if counsel was attempting to persuade the jury to find defendant guilty of a lesser-included offense to first-degree murder. However, defendant was also charged with felony murder. In light of that additional charge, defendant argued that defense counsel's concession that defendant may have been at the scene was tantamount to admitting he participated in the robbery during which Contreras was killed and, therefore, that he was guilty of the felony murder charge. Defendant asserted that if he knew that his attorney was going to change the game plan, he would have pled guilty prior to trial in an attempt to avoid a life sentence.

At the conclusion of the argument, the PCR judge determined that an evidentiary hearing was needed to resolve defendant's contention concerning his attorney's alleged change in trial strategy. We will return to this issue shortly.

III.

Defendant raised four other issues in his petition. Defendant alleged his trial counsel was ineffective because he did not object when one of the police officers testified that defendant did not provide him with a permit allowing him

7

to possess the handgun. Defendant argued that this testimony improperly shifted the burden of proof to him. Defendant also claimed his appellate counsel was ineffective for not raising this issue on direct appeal.

Defendant next argued that his trial counsel was ineffective because he did not object to arguments the prosecutor made in summation about defendant being in possession of a cellphone that did not belong to defendant or Contreras. Defendant asserted the prosecutor's statement violated N.J.R.E. 404(b) by implying the phone the defendant possessed must have been stolen. Defendant also contended his appellate attorney was ineffective for not raising this issue on direct appeal.

In his third argument, defendant alleged that his attorney should have objected when the prosecutor referred to the existence of photographs that were not introduced in evidence during closing arguments. Finally, defendant argued that a new trial was necessary because of the cumulative effect of his attorney's ineffective representation.

As set forth in the June 19, 2020 transcript, the PCR judge began to address these four issues by stating they were "going to be denied for the following reasons." The judge then recounted the procedural history of the case

and the arguments defendant raised on direct appeal.[1]   After providing a description of the applicable law governing PCR petitions, the judge noted that defendant had raised some claims in his original PCR petition that were not addressed in the brief his attorney filed on his behalf prior to oral argument.  The judge therefore stated, "There's nothing further added to these arguments.  They are bold assertions."

At that point in the transcript, it appears that the judge was about to address the four remaining issues raised in defendant's trial brief.  However, the transcript merely states:

> (inaudible – recording issue) is denied as to a prima facie case of ineffective assistance of counsel as to the other claims.  For those reasons or for that reason, the [c]ourt's going to deny the [PCR] relief on those claims.

The judge made no further findings concerning the four issues until near the conclusion of the hearing, where he was summarizing his ruling on the need to hold an evidentiary hearing on defendant's first claim of ineffective assistance of counsel.  The judge stated:

> For those reasons, the [c]ourt is going to grant [defendant] an evidentiary issue on that issue.  As to the other issues, again, I find no deficiency in the trial.

---

[1]   None of the arguments defendant raised on direct appeal addressed the ineffective assistance of counsel arguments defendant raised in his PCR petition.

> The Appellate Division has already ruled on all those issues regarding the trial and I'm going to deny [defendant's] claims on the balance . . . of the issues presented.

Again, however, the transcript contains no explanation for the judge's decision to deny PCR on defendant's four remaining claims. As noted above, and contrary to the judge's final comment, we did not address any ineffective assistance of counsel claims on defendant's direct appeal. The judge did not issue an order memorializing either his decision to direct an evidentiary hearing on Point I of defendant's petition, or his decision to deny an evidentiary hearing and PCR on his four remaining contentions.

## IV.

On May 26, 2022, a different judge conducted the evidentiary hearing. Defendant and his trial attorney testified. Defendant repeated his contention that his attorney effectively invited the jury to find him guilty of felony murder by implying that even if he had been the shooter, he did not intend to kill Contreras because the gun went off by accident.

At the hearing, however, defense counsel pointed to the argument he actually made during his summation at the trial. In his closing argument, the attorney told the jury:

There's just one area that I want to talk to you about briefly because it's kind of . . . a legal issue but I think it's something that I asked questions about during the course of the case and it's one of the charges in the [i]ndictment.

So, I think we have to talk about it because one of the charges in the [i]ndictment, matter of fact the first charge, is the charge of purposeful [m]urder, <u>meaning whoever did the murder</u> intentionally or purposefully killed Mr. Contreras.

In other words, it was in their intention, it was their purpose to kill him when this event happened . . . and the [j]udge is going to explain the law to you with respect to the charges.

But part of that is also if somebody purposely inflicts serious bodily injury on somebody that results in death, they can be guilty of that.

<u>Regardless of who did the shooting in this case</u>, I'd argue that the State hasn't made out a case of purposeful [m]urder and the reason I say that is because of the testimony that you heard basically in three areas.

And that's why I asked these questions, which is why I'm explaining it to you. One is, is you heard [the two robbery victims] talk about that pushing of the hand, they said.

And if you remember in the original statement, I think it was Mr. Nolasco said that he made a movement towards the [pistol] . . . .

And you have Dr. Hood testifying with respect to the injury to the tip of the finger. There's like a small bruising on the finger of the victim.

11

> If it wasn't the hand that he pushed but it was the gun –
> and I think Dr. Hood even testified that that injury could
> have happened, and he went like this, by a grabbing
> motion.
>
> And that gun, you heard about basically, Detective
> Burkhart . . . didn't say that it had a hair trigger.  He
> said most companies won't categorize their guns as
> having hair triggers or whatever.
>
> But he said this is a light trigger and the bullets inside
> the gun had been hit, struck before and not fired.
>
> <u>I would argue that whoever did this crime, there's no
> proof that it was intentional, based on those
> circumstances.  There's no proof that if was an intention
> [sic] or a purposeful homicide.</u>
>
> [(emphasis added)].

Thus, contrary to defendant's argument, defense counsel never told the jury that <u>defendant</u> was present at the scene.  Rather, his comments regarding the possibility that the gun might have gone off accidentally were directed to "whoever did the crime," not to defendant.

In his June 8, 2022 written decision, the judge determined that defense counsel had a sound tactical reason for making this argument to the jury.  The judge explained:

> [Defense counsel] never argued nor suggested to the
> jury that "if you think he did it, then it only happened
> by accident."  [Defense counsel] testified that he

12

believed that this argument, which was a very small part of his nearly hour-long closing, was an attempt to soften the jury. Per his testimony, he believed that the State was painting a picture of an assailant who was cruel, harsh and ambivalent to the victim's death. Further, as with much of his closing and cross-examination, trial counsel attempted to portray the State as overreaching.

The judge continued:

Through cross-examination and closing, [defense counsel] attempted to point to and exploit weaknesses in the State's proofs. Through cross-examination of the gun expert, he got the expert to agree that accidental discharge was a possibility. This allowed him to argue at closing that again, the purposeful murder that the State was vigorously pursuing was an overreach as its own expert conceded that the firearm could have gone off accidentally. If [defense counsel] was successful in convincing [the jury of] the overreaching or "overselling" the strength of their evidence by the State, then the jury may be willing to accept his argument that the weaknesses of the State's proofs amounted to reasonable doubt.

The judge concluded that defense counsel's explanation of his strategic choice was credible and that the attorney did not provide ineffective assistance to defendant in connection with his closing statement as claimed by defendant in Point I of his PCR petition.[2] This appeal followed.

---

[2] Because the first judge had limited the scope of the evidentiary hearing to defendant's argument in Point I of his petition, the second judge did not further address the four other arguments defendant raised in the petition.

13

V.

On appeal, defendant raises the same five contentions he presented in his
PCR petition. He asserts:

> POINT I – AS DEFENDANT HAD ESTABLISHED
> THAT HE WAS DENIED EFFECTIVE LEGAL
> REPRESENTATION WHEN HIS ATTORNEY
> PRESENTED A CLOSING ARGUMENT WITH AN
> INCONSISTENT DEFENSE OF AN ACCIDENTAL
> SHOOTING AND, WITHOUT CONSULTING WITH
> OR GAINING THE APPROVAL OF THE
> DEFENDANT, SUGGESTED TO THE JURY THAT
> IT COULD FIND DEFENDANT GUILTY OF
> AGGRAVATED MANSLAUGHTER, THE
> DEFENDANT WAS PREJUDICED THEREBY
> BECAUSE THERE WAS A REASONABLE
> PROBABILITY THAT THE OUTCOME OF THE
> TRIAL WOULD HAVE BEEN DIFFERENT HAD
> TRIAL COUNSEL STUCK WITH THE SINGLE
> DEFENSE OF FACTUAL INNOCENCE.
>
> POINT II – THE PCR COURT ERRED IN FAILING
> TO HOLD AN EVIDENTIARY HEARING ON THE
> OTHER ISSUES RAISED IN DEFENDANT'S PCR
> PETITION.
>
> (A) AS DEFENDANT HAD PRESENTED A PRIMA
> FACIE CASE THAT TRIAL COUNSEL WAS
> INEFFECTIVE FOR NOT OBJECTING TO
> EVIDENCE THAT CLEARLY SHIFTED THE
> BURDEN OF PROOF TO THE DEFENDANT, THE
> PCR COURT ERRED WHEN IT DENIED THE
> CLAIM WITHOUT FIRST HOLDING AN
> EVIDENTIARY HEARING ON THAT ISSUE.

(B) AS DEFENDANT HAD PRESENTED A <u>PRIMA FACIE</u> CASE THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO EVIDENCE OF PRIOR BAD ACTS PURSUANT TO N.J.R.E. 404(b), THE PCR COURT ERRED WHEN IT DENIED THE CLAIM WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING ON THAT ISSUE.

(C) AS DEFENDANT HAD PRESENTED A <u>PRIMA FACIE</u> CASE THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTOR'S COMMENTS ON FACTS NOT IN EVIDENCE AND PREJUDICIAL EVIDENCE NOT PRESENTED TO THE JURY, THE PCR COURT ERRED WHEN IT DENIED THE CLAIM WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING ON THAT ISSUE.

(D) POST-CONVICTION RELIEF WAS REQUIRED BECAUSE OF THE CUMULATIVE EFFECT OF THE ERRORS AND THE INEFFECTIVENESS SET FORTH ABOVE.

A.

We begin by addressing the argument defendant raises in Point I. These are the arguments that the second judge addressed following the evidentiary hearing and in his June 8, 2022 written decision.

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. <u>State v. Nash</u>, 212 N.J. 518, 541 (2013); <u>State v. Preciose</u>, 129 N.J. 451, 459 (1992). To sustain that burden, the defendant must allege and articulate

15

specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Because prejudice is not presumed, Fritz, 105 N.J. at 52, a defendant must demonstrate with "reasonable probability" that the result

16

would have been different had he received proper advice from his trial attorney. Strickland, 466 U.S. at 694.

Moreover, the acts or omissions of counsel of which a defendant complains must amount to more than mere tactical strategy. Id. at 689. As the Supreme Court observed in Strickland,

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
>
> [Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).]

Where, as here, the judge conducts an evidentiary hearing, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Additionally, we defer to a trial judge's findings that are "substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the

17

case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15).

Having considered defendant's contentions in Point I of his brief in light of the record and these well-established principles, we discern no basis for disturbing the second judge's June 8, 2022 determination that defendant failed to satisfy the Strickland test with regard to these assertions. Accordingly, we affirm the judge's denial of defendant's arguments concerning his attorney's closing statements substantially for the reasons detailed at length in the judge's well-reasoned and comprehensive written opinion.

### B.

We reach a different conclusion with respect to defendant's claims in Point II of his brief. These are the contentions that were rejected by the first judge in the truncated oral decision rendered on June 10, 2020.

As discussed in Section II of our opinion, the judge's explanation for his decision on these four issues was completely inaudible and is missing from the transcript. We therefore have no inkling why the judge rejected defendant's arguments concerning defense counsel's alleged failure to object to testimony about the lack of a gun permit; the possible improper introduction of other crime and photographic evidence into the record; appellate counsel's decision not to

18

raise two of these issues on direct appeal; and the cumulative effect of the alleged incidents of ineffective assistance. We also do not know why the judge decided not to conduct an evidentiary hearing concerning any of these issues.

It should go without saying that we cannot consider an issue on appeal without some understanding of why a trial judge has rendered a particular ruling. See Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (requiring trial court to clearly state its factual findings and correlate them with the relevant legal conclusions); See also R. 3:22-11 (requiring a court to "state separately its findings of fact and conclusions of law" when making a final determination of a PCR petition). Unfortunately, that is the situation we face here.

Neither of the parties addressed the deficient transcript in their respective briefs. Apparently, they believe an appellate court can consider PCR petitions de novo. However, this is not the case. As we have previously made clear, "our function as an appellate court is to review the decision of the trial court, not to decide [a matter] tabula rasa." Estate of Doerfler v. Federal Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018).

In light of the deficiencies in the transcript and, therefore, in the oral decision rendered by the first judge, we reverse that judge's denial of defendant's PCR petition as it relates to the contentions defendant raises in Point II of his

brief. We remand these four issues to the trial court for reconsideration. On remand, we are confident that the court will clearly state its "factual findings and correlate them with the relevant legal conclusions." <u>Curtis</u>, 83 N.J. at 569-70.

Affirmed in part; reversed in part; and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3736-21